(No. 89497

(No. 89511

MARK OLIVEIRA, Appellee and Cross-Appellant, v. AMOCO OIL COMPANY, Appellant and Cross-Appellee.

*Opinion filed June 20, 2002.—Rehearing denied August 29, 2002.*

Richard C. Godfrey, Scott W. Fowkes, David J. Zott, Steven C. Coberly and Andrew M. Johnstone, of Kirkland & Ellis, and Timothy L. Moorehead, all of Chicago, Richard L. Thies and John E. Thies, of Webber & Thies, P.C., of Urbana, and John D. Colombo, of Champaign, for appellant and cross-appellee Amoco Oil Company.

Joseph W. Phebus, Gary D. Forrester and Geoffrey A. Hoffman, of Phebus & Winkelmann, of Urbana, Michael B. Hyman and Melinda J. Morales, of Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., of Chicago, Ann D. White and Robert Eisler, both of Jenkintown, Pennsylvania, Edward Grossmann, Seth R. Lesser and Samera S. Ludwig, of Bernstein, Litowitz, Berger & Grossmann, L.L.P., of New York, New York, and Edward J. Kionka, of Carbondale, for appellee and cross-appellant Mark Oliveira.

William H. Kelly, Jr., Ira M. Levin and Barbara A. Gimbel, of Rosenthal & Schanfield, P.C., of Chicago, and Dennis M. O'Keefe, of Lake Forest, for *amici curiae* Illinois Automobile Dealers Association and Chicago Automobile Trade Association.

William J. Harte, Ltd., Joseph E. Tighe, P.C., and Sotiras & Mannix, Ltd., all of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Robert H. King, Jr., of Greenberg Traurig, L.L.P., of

Chicago, for *amici curiae* National Association of Independent Insurers *et al.*

Stephen J. Harburg, John H. Beisner and Jonathan L. Griffith, of O'Melveny & Myers, L.L.P., of Washington, D.C., for *amicus curiae* Product Liability Advisory Council, Inc.

Michele Odorizzi and Allan Erbsen, of Chicago, and Evan M. Tager, of Washington, D.C., all of Mayer, Brown & Platt, and Stephen A. Bokat, of Washington, D.C., for *amicus curiae* Chamber of Commerce of the United States of America.

Michael A. Pope, Joseph G. Fisher and Anthony F. Fata, of McDermott, Will & Emery, of Chicago, for *amicus curiae* Lawyers for Civil Justice.

JUSTICE McMORROW delivered the opinion of the court:

The plaintiff, Mark Oliveira, filed a one count, amended class action complaint against the defendant, Amoco Oil Company, in the circuit court of Champaign County. The complaint alleged that defendant violated the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 *et seq.* (West 1996)) by falsely representing in a series of advertisements that the use of its premium gasolines would improve engine performance and benefit the environment. The complaint further alleged that defendant's advertisements increased consumer demand for the premium gasolines. This, in turn, allegedly permitted defendant to "command an inflated and otherwise unsustainable price for its premium gasolines," thereby proximately causing actual damage to all purchasers of the gasolines, regardless of whether they were aware of the ads at the time of purchase. The complaint sought certification of a nationwide class of

consumers who had purchased defendant's premium gasolines.

Defendant filed a motion to dismiss plaintiff's complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)). The circuit court granted defendant's motion on the basis that plaintiff's "proximate causation pleading [was] inadequate to state a cause of action under the Illinois Consumer Fraud Act." At the same time, the circuit court also denied plaintiff's request for class certification, finding that there were no predominating common issues of fact or law with respect to plaintiff's proposed class. On appeal, the appellate court reversed the circuit court's dismissal of plaintiff's cause of action and affirmed the circuit court's denial of class certification. 311 Ill. App. 3d 886. Plaintiff and defendant filed petitions for leave to appeal from the appellate court's decision. 177 Ill. 2d R. 315. We granted both petitions and consolidated the appeals for review.

## BACKGROUND

Plaintiff filed his amended class action complaint in the circuit court of Champaign County on May 5, 1997. The single count contained in the complaint alleged that defendant violated section 2 of the Act (815 ILCS 505/2 (West 1996)) by conducting a deceptive advertising campaign over a period of several years. Section 2 of the Act provides, in pertinent part, that "deceptive acts or practices *** or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce are hereby declared unlawful ***." 815 ILCS 505/2 (West 1996).

According to plaintiff's complaint, defendant ran a series of television, radio and print advertisements for its premium gasolines, including "Amoco Ultimate and/or

Amoco Silver," which touted the gasolines' environmental benefits and high performance qualities. The advertisements allegedly represented that:

"(A) Amoco Ultimate gasoline is superior to all other brands of premium gasoline with respect to engine performance or environmental benefits because it is refined more than all other such brands;

(B) The clear color of Amoco Ultimate gasoline demonstrates the superior engine performance and environmental benefits Amoco Ultimate provides compared to other premium brands of gasolines that are not clear in color;

(C) A single tankful of Amoco Silver or Ultimate gasoline will make dirty or clogged fuel injectors clean;

(D) Amoco Silver or Ultimate gasoline provides superior fuel injector cleaning compared to other brands of gasoline; and

(E) Automobiles driven more than 15,000 miles with regular gasoline generally suffer from lost engine power or acceleration which will be restored by the higher octane of Amoco Silver gasoline."

Plaintiff's complaint alleged that defendant's advertisements omitted material facts and were "false and misleading." According to plaintiff's complaint, the representations in defendant's ads were "made without any competent and/or scientific substantiation" and defendant's premium gasolines were in fact "no better for the performance of [consumers'] motor vehicles than [nonpremium] gasolines." The complaint also alleged that defendant's advertisements were made in the course of trade or commerce and that defendant intended "that consumers would rely on these advertisements in making their purchase decisions." Therefore, according to plaintiff's complaint, defendant's advertisements violated section 2 of the Act.

Plaintiff also alleged in his amended complaint that defendant's advertisements proximately caused him actual damage. Proximate causation was a necessary element of plaintiff's complaint because his claim for

consumer fraud was brought under section 10a(a) of the Act (815 ILCS 505/10a(a) (West 1996)), the provision of the Act which establishes the right to pursue a private cause of action for consumer fraud. Section 10a(a) states, in part, that "[a]ny person who suffers actual damage as a result of a violation of [the] Act" may bring a cause of action against that person for consumer fraud. 815 ILCS 505/10a(a) (West 1996). The "as a result of" language in section 10a(a) imposes an obligation upon a private individual seeking actual damages under the Act to "demonstrate that the fraud complained of proximately caused" those damages in order to recover for his injury. *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 373 (1998).

Plaintiff maintained in his complaint that he suffered actual damage as a result of the allegedly deceptive advertisements when he purchased defendant's premium gasoline. Plaintiff did not allege, however, that defendant's advertisements induced him to buy the gasoline or that he was deceived by the ads. Nor did plaintiff claim that he saw, heard or read any of the allegedly deceptive advertisements. Instead, plaintiff alleged that he was damaged by defendant's advertisements because the ads created an "artificially inflated" price for the gasoline he purchased. In support of this allegation, plaintiff advanced a "market theory" of causation.[1] According to plaintiff's complaint, defendant's allegedly deceptive advertising scheme increased demand for defendant's premium gasolines. Because of this increase in demand, defendant "was able to command an inflated and other-

---

[1]Plaintiff's theory of causation bears marked similarities to the "fraud on the market" theory found in federal securities case law. See, *e.g.*, *Basic Inc. v. Levinson*, 485 U.S. 224, 99 L. Ed. 2d 194, 108 S. Ct. 978 (1988); but see *Kaufman v. I-Stat Corp.*, 165 N.J. 94, 113-118, 754 A.2d 1188, 1198-1201 (2000) (discussing criticisms of the theory).

wise unsustainable price for its premium gasolines." Therefore, "all purchasers of Amoco's premium gasolines were injured irrespective of whether they did or did not see or hear the specific advertisements and marketing materials in question." In other words, according to plaintiff's complaint, all consumers who purchased defendant's premium gasolines during the time the advertisements were running were damaged when they made the purchase because they paid a higher price for the gasoline than they would have paid in the absence of the ads.

In the prayer for relief, plaintiff's complaint requested an order from the circuit court certifying his action as a class action. See 735 ILCS 5/2—801 *et seq.* (West 1996). Plaintiff's proposed class was defined as "[a]ll retail purchasers in the United States who purchased Amoco Ultimate and/or Amoco Silver gasoline" during the time the various advertisements ran, from approximately November 6, 1991, through January 2, 1996.[2] In support of his request for class certification, plaintiff submitted the affidavit of Dr. William R. Latham III, a professor of economics at the University of Delaware. Taking as a

---

[2] The record indicates that the end date of the class period, January 2, 1996, was the effective date of a consent decree between defendant and the Federal Trade Commission. Pursuant to this consent decree, which does not contain any express finding of wrongdoing, defendant agreed to cease making the various representations at issue in this appeal unless, "at the time of making such representation, [defendant] possesses and relies upon competent and reliable scientific evidence that substantiates the representation." The actions taken by the Federal Trade Commission with respect to the advertising conducted by defendant, as well as other oil companies, have prompted several civil lawsuits raising claims similar to those presented here. See, *e.g.*, *Weinberg v. Sun Co.*, 565 Pa. 612, 777 A.2d 442 (2001); *Ex Parte Exxon Corp.*, 725 So. 2d 930 (Ala. 1998); *DeLima v. Exxon Corp.*, No. A—3536—99T5 (N.J. Super. Ct. App. Div. December 4, 2000) (unpublished opinion).

given that defendant's advertisements were misleading and that they had an effect on consumers, Latham opined that "there exists a strong economic likelihood that a substantial part of the price differential between Ultimate and/or Silver and the other grades of Amoco gasoline was the result of the greater demand for Ultimate and/or Silver gasoline caused by the misleading advertisements for the premium gasolines. A necessary result of the fact that the misleading advertising led some consumers to demand Amoco premium gasolines was an increase in demand that permitted Amoco to maintain a higher price for its premium gasolines." According to Latham, all individuals who purchased defendant's premium gasolines paid an increased price because of the allegedly deceptive ads, regardless of whether they saw or relied upon the advertisements at issue. Latham also stated that the extent of the "inflated" price—the difference between the price of the gasoline with the ads and the price of the gasoline without the ads—could be determined by "using the basic techniques of econometric analysis."

Defendant filed a motion to dismiss plaintiff's complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)). Defendant also contested plaintiff's request for class certification. On February 24, 1998, in a ruling issued from the bench, the circuit court concluded that plaintiff's "marketing theory" of causation was "not a correct statement of proximate cause under the Illinois Consumer Fraud Act." Accordingly, the circuit court granted defendant's motion to dismiss "on the basis that the proximate causation pleading is inadequate to state a cause of action under the Illinois Consumer Fraud Act."

Although the circuit court dismissed plaintiff's complaint, the court nevertheless went on to consider plaintiff's request for an order certifying a nationwide

class of consumers who had purchased defendant's premium gasolines. On this issue, the circuit court concluded that there were "so many variables" that might influence a consumer's decision to buy a particular gasoline, including, for example, the location of the gas station or other services available at the station, that the court could not "find that questions of fact would be common to the class or that the common questions would predominate over any questions affecting only individual members." The circuit court also found that no common questions of law existed because the Act "would not extend to persons who were not Illinois consumers." Consequently, because there was "a lack of commonality of questions of law or fact" with respect to plaintiff's proposed class, the circuit court denied plaintiff's request for class certification.

On appeal, the appellate court first considered the propriety of the circuit court's dismissal of plaintiff's complaint and, in particular, the circuit court's conclusion that plaintiff had failed to adequately plead proximate causation as required under section 10a(a) of the Act. As set forth by the appellate court, the parties' arguments on this issue focused primarily on this court's holding in *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33 (1994).

In *Martin*, this court considered a private cause of action brought under the Act in which it was alleged that a brokerage firm misrepresented the nature of a certain securities fee. This court addressed, among other issues, what type of causation the plaintiff had to prove to recover damages for the defendant's misrepresentation. Relying on federal case law, this court adopted a causation analysis found in federal decisions interpreting Rule 10(b)—5 of the Securities and Exchange Act of 1934. We explained:

"In order for a plaintiff to recover for a violation of Rule 10(b)—5, the great majority of Federal courts require

> plaintiffs to show two types of causation: (1) transaction causation; and (2) loss causation. [Citation.] Transaction causation has been defined as meaning that 'the investor would not have engaged in the transaction had the other party made truthful statements at the time required.' [Citation.] Loss causation, on the other hand, has been defined as meaning 'that the investor would not have suffered a loss if the facts were what he believed them to be.'
> \*\*\*
> We find Illinois law to be similar to the analysis used by these Federal courts which require both transaction causation and loss causation in order to recover for misrepresentation in securities cases." *Martin*, 163 Ill. 2d at 60.

See also *Adler v. William Blair & Co.*, 271 Ill. App. 3d 117, 128-29 (1995); *Bastian v. Petren Resources Corp.*, 271 Ill. App. 3d 232, 235 (1995) (in securities fraud, transaction causation occurs when the defendant's conduct causes the plaintiff to enter into a transaction; loss causation refers to the reasons for the investment's decline in value).

Before the appellate court in the case at bar, defendant argued that, under *Martin*, any plaintiff seeking recovery under the Act must allege "transaction causation." That is, a plaintiff must allege that he would not have engaged in the transaction that resulted in damage if the defendant had made truthful statements rather than misleading ones. Defendant argued that plaintiff in the instant case had not made any such allegation and, indeed, could not, since he did not allege that he was even aware of defendant's advertisements. Therefore, according to defendant, plaintiff's complaint was properly dismissed.

The appellate court rejected this argument. The appellate court concluded that the term "transaction causation," as used in *Martin*, was simply another name for reliance. See 311 Ill. App. 3d at 893. The appellate court noted, however, that this court has stated in several decisions that reliance is not a separate element of a

plaintiff's cause of action under the Act. 311 Ill. App. 3d at 893 (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996), *Martin,* 163 Ill. 2d at 76, and *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 542 (1992)). Attempting to reconcile *Martin's* holding requiring proof of transaction causation with these latter statements, the appellate court concluded that transaction causation, or reliance, was an element of a plaintiff's cause of action only in cases involving securities fraud brought under the Act. 311 Ill. App. 3d at 893. Because plaintiff's cause of action in the case at bar did not concern securities fraud, the appellate court concluded that transaction causation was not a relevant concern.

Having rejected defendant's argument regarding transaction causation, the appellate court concluded that plaintiff's marketing theory of causation satisfied the proximate causation requirement of the Act. The appellate court noted plaintiff's allegation that, but for defendant's allegedly deceptive advertisements, defendant's premium gasolines would have cost less than they actually did. The appellate court further noted that plaintiff had alleged that he purchased defendant's gasoline during the time the advertisements would have had their effect, *i.e.,* after they were published or broadcast. These allegations, the appellate court determined, set forth a legally sufficient statement of proximate causation under the Act. 311 Ill. App. 3d at 896.

The appellate court rejected defendant's additional arguments that plaintiff's complaint was properly dismissed because it was not pled with the level of particularity required under the Act and because it failed to plead a material misrepresentation. 311 Ill. App. 3d at 894-95. Accordingly, the appellate court reversed the circuit court's dismissal of plaintiff's complaint.

With respect to the question of class certification, however, the appellate court affirmed the circuit court.

The appellate court noted that a suit may not be certified as a class action unless "[t]here are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members" (735 ILCS 5/2—801(2) (West 1996)). Addressing this requirement, the appellate court first held, as a matter of statutory construction, that the Act did not apply to out-of-state consumers. 311 Ill. App. 3d at 897-98. In addition, the appellate court determined that the members of plaintiff's proposed class from outside Illinois lacked sufficient contacts with Illinois to permit application of the Act. The court stated:

> "As the purchase of gasoline in his or her respective state and the determinants of the price paid for it were what triggered each potential plaintiff's cause of action, something that does not affect Illinois commerce or consumers, no significant connection to Illinois justifies the use of Illinois law." 311 Ill. App. 3d at 899.

Because the Act could not be applied to out-of-state members of the proposed class, the appellate court concluded that those members' claims would be governed by the laws of each state where the gasoline was purchased. 311 Ill. App. 3d at 899. Thus, the appellate court held, there was "no common law to apply." 311 Ill. App. 3d at 899. Further, because the elements of the consumer fraud laws of some other states differ from the Act's, the appellate court concluded that "[t]he claims of out-of-state plaintiffs would require individual fact finding and no predominance of common fact exists." 311 Ill. App. 3d at 899. Accordingly, the appellate court affirmed the circuit court's denial of class certification.

Plaintiff filed a petition for leave to appeal the appellate court's judgment affirming the denial of class certification. 177 Ill. 2d R. 315. The petition was allowed and the case was docketed in this court as No. 89511. Defendant filed a petition for leave to appeal the appellate court's judgment reversing the dismissal of plaintiff's

cause of action. That petition was also allowed and the case was docketed as No. 89497. The two appeals were consolidated for review.

We subsequently granted leave to the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of plaintiff's appeal. We also granted leave to the Product Liability Council, the National Association of Independent Insurers, the American Insurance Association and the Alliance of American Insurers, the Illinois Automobile Dealers Association and the Chicago Automobile Trade Association, Lawyers for Civil Justice, and the Chamber of Commerce of the United States, to file *amicus curiae* briefs in support of defendant.

## ANALYSIS

In No. 89497, defendant contests the appellate court's holding that plaintiff adequately pled a private cause of action for consumer fraud under the Act. In No. 89511, plaintiff challenges the appellate court's holding that the circuit court properly denied class certification. We first consider defendant's appeal.

## No. 89497

The circuit court granted defendant's motion to dismiss plaintiff's amended class action complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)). A section 2—615 motion attacks the legal sufficiency of a complaint by asserting that it fails to state a cause of action upon which relief can be granted. *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 491 (1999). In determining whether a complaint states a cause of action, the allegations contained within the complaint are construed in the light most favorable to the plaintiff and all well-pleaded facts and reasonable inferences drawn from those facts are accepted as true. *Weatherman*, 186 Ill. 2d at 491. The standard of review on appeal from an order

granting a section 2—615 motion to dismiss is *de novo*. *Weatherman*, 186 Ill. 2d at 491.

Plaintiff's amended class action complaint alleges that defendant violated section 2 of the Act (815 ILCS 505/2 (West 1996)). Section 2 prohibits deceptive acts or practices which are committed in the course of trade or commerce and with the intent that others rely upon them. Section 2 provides, in full:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section, consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 815 ILCS 505/2 (West 1996).

When originally enacted in 1961, the Act did not expressly provide a private cause of action for violations of section 2. But see *Rice v. Snarlin, Inc.*, 131 Ill. App. 2d 434 (1970) (holding that the Act impliedly permitted a private cause of action). Unlawful business practices were generally prosecuted by the Attorney General, who had the authority to pursue injunctive relief, restitution and civil penalties. See 815 ILCS 505/3 through 7 (West 1996). In 1973, the General Assembly added section 10a(a) to the Act (815 ILCS 505/10a(a) (West 1996)). Section 10a(a) expressly authorizes private causes of action for deceptive business practices proscribed by the Act. Section 10a(a) states, in relevant part: "Any person who suffers actual damage as a result of a violation of [the] Act com-

mitted by any other person may bring an action against such person." 815 ILCS 505/10a(a) (West 1996).

Unlike an action brought by the Attorney General under section 2, which does not require that "any person has in fact been misled, deceived or damaged" (815 ILCS 505/2 (West 1996)), a private cause of action brought under section 10a(a) requires proof of "actual damage" (815 ILCS 505/10a(a) (West 1996)). Further, a private cause of action brought under section 10a(a) requires proof that the damage occurred "as a result of" the deceptive act or practice (815 ILCS 505/10a(a) (West 1996)). As noted previously, this language imposes a proximate causation requirement. See, *e.g.*, *Zekman*, 182 Ill. 2d at 373; *Martin*, 163 Ill. 2d at 52-54, 58-61. Thus, to adequately plead a private cause of action for a violation of section 2 of the Act, a plaintiff must allege: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception. *Zekman*, 182 Ill. 2d at 373; *Connick*, 174 Ill. 2d at 501.

Defendant's primary contention on appeal is that plaintiff's "marketing theory" of causation is a legally insufficient statement of proximate causation and, therefore, that the circuit court properly dismissed plaintiff's amended complaint. In support of this contention, defendant repeats the same arguments which it raised in the appellate court regarding *Martin*. Defendant further argues that it was error for the appellate court to hold that *Martin*'s requirement of "transaction causation" applies only to cases involving securities fraud brought under the Act.

Defendant also raises an additional point regarding *Martin*. Defendant emphasizes that *Martin*'s causation

analysis was based on common law principles of causation found in the tort of fraudulent misrepresentation. See *Martin*, 163 Ill. 2d at 58-61. This fact is significant because, in the common law tort of fraudulent misrepresentation, the causal link between the wrongdoer and the damage to the plaintiff is provided by the concept of reliance. More precisely, in the common law tort of fraudulent misrepresentation, the element of cause-in-fact is *defined* as reliance. See Restatement (Second) of Torts § 546, Comment *a*, at 103 (1977) ("If the [fraudulent] misrepresentation has not in fact been relied upon by the recipient in entering into a transaction in which he suffers pecuniary loss, the misrepresentation is not in fact a cause of the loss"); 2 D. Dobbs, Law of Torts § 474, at 1358 (2001) ("The requirement of reliance in fact is a requirement that the defendant's representation is one of the causes in fact of the plaintiff's harm, although it need not be the sole cause"). Thus, defendant suggests that reliance, although not listed as a separate element under section 10a(a) of the Act, is necessarily subsumed under that section's causation requirement. See *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill. App. 3d 1032, 1041 (1992); *Elipas Enterprises, Inc. v. Silverstein*, 243 Ill. App. 3d 230, 235 (1993); M. Polelle & B. Ottley, Illinois Tort Law § 9.05, at 9—32 (3d ed. 2001) ("without any need to prove actual reliance it is difficult to imagine how a plaintiff who chooses not to can show *** proximate cause"); see also *Weinberg v. Sun Co.*, 565 Pa. 612, 617, 777 A.2d 442, 445 (2001) (under state consumer fraud act requiring proof that the plaintiff's damage occurred "as a result of" the statutory violation, the plaintiff must prove reliance).

Although defendant makes the above observations regarding causation and reliance, defendant maintains that the precise relationship between those concepts under the Act need not be decided in order to resolve

this appeal. Instead, defendant argues that the adequacy of plaintiff's "marketing theory" of causation may be decided under the narrower principles set forth in *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359 (1998), the most recent decision of this court to consider the element of proximate causation required under section 10a(a) of the Act.

Defendant maintains that, under *Zekman*, a plaintiff pursuing a claim for deceptive advertising under the Act must prove that he was deceived by the ads in order to establish proximate causation. If the plaintiff is unable to show that he was deceived, defendant argues, then the plaintiff is too far removed from the wrongdoing as a matter of law to establish the "immediate" and "direct" relationship between the wrongdoing and the injury that is required for proximate causation. See, *e.g.*, *Martin*, 163 Ill. 2d at 58 (" 'the injury suffered by the plaintiff must be the natural and not merely a remote consequence of the defendant's act' "), quoting *Town of Thorton v. Winterhoff*, 406 Ill. 113, 119 (1950). Therefore, according to defendant, because plaintiff's amended complaint does not allege that he was deceived by defendant's ads, the complaint was properly dismissed.

We agree with defendant that *Zekman* controls this appeal. We therefore address that case in some detail. In *Zekman*, the plaintiff received a series of allegedly deceptive mailings from a direct mail marketer. These mailings stated that the plaintiff had won a prize from among a list of prizes contained in the mailing. Some of the prizes listed were large cash awards, while others were merely discount coupons for various products or services. To claim his prize, the mailings indicated that the plaintiff should call a "900" phone number, although it was also indicated that he could reply by mail. When the plaintiff phoned the "900" number, he incurred charges of between $8 to $10 per call. The plaintiff made several

calls to various "900" numbers listed in the mailings but never won a cash award. AT&T, which reviewed the direct marketer's mailings to ensure that they complied with its policies regarding "900" numbers, billed the plaintiff for the phone charges. The majority of the phone charges went to the direct marketer but AT&T retained a percentage of the charges for itself. *Zekman*, 182 Ill. 2d at 363-64.

The plaintiff filed a complaint against AT&T which alleged, in pertinent part, that AT&T violated section 2 of the Act. *Zekman*, 182 Ill. 2d at 372. According to the plaintiff, AT&T violated the Act by "reviewing, revising, and approving" the "deceptive solicitations" sent to him by the direct marketer. In addition, the plaintiff alleged that AT&T violated section 2 of the Act by billing the plaintiff for his calls to the "900" numbers in a misleading manner. *Zekman*, 182 Ill. 2d at 372. In response, AT&T filed a motion for summary judgment. In this motion, AT&T argued that the plaintiff was not deceived by the mailings or the phone bills and, therefore, could not prove that AT&T's alleged misconduct caused him injury. In support of its motion for summary judgment, AT&T relied upon deposition testimony given by the plaintiff which, according to AT&T, showed that the plaintiff had not been deceived. The circuit court granted AT&T's motion for summary judgment and the plaintiff appealed. *Zekman*, 182 Ill. 2d at 373.

Before the appellate court, the plaintiff argued that his deposition testimony was essentially irrelevant to the question of whether he had established the element of causation required under the Act. The plaintiff maintained that, "even if he had been suspicious of certain deceptions in the solicitations, such awareness had no bearing on the causal link between his damages and violations of the Act" because "he reacted reasonably to the mailings" and "acted in the manner in which

defendants intended a recipient of the mailing to act." *Zekman v. Direct American Marketers, Inc.*, 286 Ill. App. 3d 462, 468 (1997). The appellate court construed this argument as an assertion that "parties are not required under the Act to show that they are actually deceived." *Zekman*, 286 Ill. App. 3d at 468. The court rejected this contention, holding that the element of proximate causation under the Act is not satisfied "where a party was not deceived." *Zekman*, 286 Ill. App. 3d at 468. Notably, in so holding, the appellate court also made additional comments about the nature of proximate causation and reliance. Like defendant in the case at bar, the appellate court noted that "the theory of reliance is ambiguously present within the parameters of the concept of proximate cause." *Zekman*, 286 Ill. App. 3d at 468.

Although the appellate court held that the plaintiff had to prove that he was deceived by the mailings in order to recover under the Act, the court nevertheless reversed the circuit court's entry of summary judgment in favor of AT&T. The appellate court held that the plaintiff's deposition testimony was not entirely clear and that there remained "a genuine issue of fact as to whether [the direct marketer's] mailing caused plaintiff to believe that he had won an award." *Zekman*, 286 Ill. App. 3d at 469. Therefore, according to the appellate court, summary judgment was improper. AT&T then appealed.

On appeal, this court did not address the "ambiguity" regarding the relationship between causation and reliance that was noted by the appellate court. Instead, our decision turned solely on the narrower issue of whether the plaintiff was deceived. We did not disturb the appellate court's holding that a plaintiff asserting a claim of deceptive advertising under the Act must prove that he was deceived by that advertising in order to establish proximate causation. However, we reversed the

appellate court's holding that there existed a question of material fact as to whether the plaintiff was deceived. After discussing the plaintiff's deposition testimony at length we stated:

> "On this record, we do not believe that there exists a genuine issue of material fact whether the allegedly deceptive nature of the solicitations received by plaintiff caused him to incur the charges for the '900' number calls. Rather, it appears that plaintiff understood the requirements and costs of the program. ***
>
> The preceding discussion also answers the plaintiff's further contention that he was deceived by AT&T's manner of billing for the calls. By his own admission, plaintiff knew that he had not necessarily won cash prizes, that he did not have to call a '900' number to learn if [he] had won such a prize, and that he would incur a charge if he did choose to learn his prize status by placing the calls. *** In addition, we note plaintiff's statement in his deposition that he did not read or pay the bills himself, delegating those duties to his secretary. Accordingly, plaintiff could not have been misled by the allegedly deceptive nature of the bills. ***
>
> In sum, based on the testimony by plaintiff at his deposition, we do not believe that there remains a genuine issue of material fact whether the alleged violations of the Act by AT&T proximately caused his damage, for plaintiff's testimony demonstrates that he was not deceived by AT&T's actions." *Zekman*, 182 Ill. 2d at 375-76.

The plaintiff's claims in *Zekman* failed as a matter of law because the plaintiff "was not deceived." *Zekman*, 182 Ill. 2d at 376. Plaintiff's amended class action complaint in the case at bar suffers from a similar infirmity. Plaintiff does not allege that he was, in any manner, deceived by defendant's advertisements. Plaintiff does not allege that he received anything other than what he expected to receive when he purchased defendant's gasoline, *i.e.*, a certain amount of gasoline, with a certain octane level, for the price listed on the pump. Indeed, plaintiff could not allege that defendant's advertisements

deceived him or misled him as to what he was receiving when he made his purchase. Because plaintiff does not allege that he saw, heard or read any of defendant's ads, plaintiff cannot allege that he believed that he was buying gasoline which benefitted the environment or improved engine performance.

Plaintiff briefly attempts to distinguish *Zekman*, stating that the plaintiff in *Zekman* "knew the truth when he made the calls and was not deceived" and that the case is limited to that "specific situation." But as defendant points out, the "situation" rejected in *Zekman* is precisely what plaintiff is asserting in this case. Under plaintiff's "market theory" of causation, purchasers of defendant's premium gasolines who saw the ads but never believed them, *i.e.*, those who "knew the truth," nevertheless have valid claims under section 10a(a) of the Act. Moreover, purchasers of defendant's premium gasolines who never saw the ads and, thus, were "not deceived" also have valid claims. These results are plainly at odds with *Zekman*.

*Zekman* makes clear that, to properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the Act, a plaintiff must allege that he was, in some manner, deceived. Contrary to these principles, plaintiff's amended class action complaint fails to allege that plaintiff was deceived by defendant's advertisements. Accordingly, we reverse the judgment of the appellate court and affirm the circuit court's dismissal of plaintiff's amended class action complaint. Because we affirm the dismissal of plaintiff's amended complaint on the ground that proximate causation was not adequately pled, we need not address other arguments raised by defendant in this appeal.

### No. 89511
We now turn to plaintiff's appeal. At issue in this ap-

peal is whether the appellate court erred in affirming the circuit court's denial of plaintiff's request for class certification.

Initially, defendant notes that, because this court has determined that plaintiff's amended class action complaint fails to state a cause of action under the Act, plaintiff's case has been "entirely dispose[d] of." Defendant argues, therefore, that any issues pertaining to class certification are no longer of any consequence to the resolution of plaintiff's case and, thus, that plaintiff's appeal has been rendered moot. See, *e.g.*, *In re Adoption of Walgreen*, 186 Ill. 2d 362, 364 (1999) (when the resolution of a question of law cannot affect the result of a case as to the parties, the question is moot). We agree.

It is established in Illinois that a circuit court may rule upon a defendant's motion to dismiss a class action complaint prior to deciding whether the suit should be certified as a class action. See *Schlessinger v. Olsen*, 86 Ill. 2d 314, 320 (1981); *Landesman v. General Motors Corp.*, 72 Ill. 2d 44, 48-49 (1978); K. Forde & K. Malloy, *State Practice: Illinois' Class Action Statute*, in Class Actions § 7.13 (Ill. Inst. for Cont. Legal Educ. 2001). In those cases where the circuit court first considers a motion to dismiss a class action complaint and holds, as an initial matter, that no cause of action has been stated, it is unnecessary for the court to proceed to the issue of class certification. The granting of the motion to dismiss fully resolves the question of whether the plaintiff can obtain relief. Further consideration of the issues pertaining to class certification will have no effect on the court's conclusion that the complaint failed to state a cause of action and, hence, no effect on the result of the case as to the parties. See *Schlessinger*, 86 Ill. 2d at 318. Consequently, "a dismissal for failure to state a cause of action will render moot the question of certification of the class." 4 R. Michael, Illinois Practice § 30.2 n.2 (1989);

*Schlessinger*, 86 Ill. 2d at 320 (granting of a motion to dismiss a class action complaint eliminates the need to litigate the requirements of class certification); see also *O'Shea v. Littleton*, 414 U.S. 488, 494 n.3, 38 L. Ed. 2d 674, 682 n.3, 94 S. Ct. 669, 675 n.3 (1974) ("There was no class determination made in this case as the complaint was dismissed on grounds [lack of standing] which did not require that determination to be made"); *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995).

In this case, for the reasons stated above, plaintiff's amended class action complaint failed to state a cause of action for which relief can be granted under the Act. It is therefore unnecessary for this court to address the merits of plaintiff's request for class certification. See *Schlessinger*, 86 Ill. 2d at 320. Any statements or holdings made by the lower courts with respect to the appropriateness of class certification were wholly advisory, as would be any statements made by this court on the issue. Advisory opinions are to be avoided. See *Barth v. Reagan*, 139 Ill. 2d 399, 419 (1990). For this reason, we express no opinion on the appropriateness of class certification in this case. We also vacate those portions of the circuit and appellate court judgments which addressed the issue of class certification. See *Walgreen*, 186 Ill. 2d at 366, citing *In re Special Prosecutor*, 126 Ill. 2d 208 (1988); *Bluthardt v. Breslin*, 74 Ill. 2d 246, 251 (1979).

## CONCLUSION

In No. 89497, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed. In No. 89511, the judgments of the circuit and appellate court are vacated.

> *No. 89497—Appellate court judgment reversed;*
> *circuit court judgment affirmed.*
> *No. 89511—Appellate court judgment vacated;*
> *circuit court judgment vacated.*

JUSTICE KILBRIDE took no part in the consideration or decision of this opinion.

CHIEF JUSTICE HARRISON, dissenting:

Proximate cause is essential to a private right of action for damages under section 10a(a) of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/10a(a) (West 1996)). Actual reliance by the plaintiff is not. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996). The appellate court correctly applied these concepts to the case before us. See 311 Ill. App. 3d at 892-95. I would therefore affirm that portion of its judgment reversing the circuit court's order dismissing Oliveira's complaint for failure to state a cause of action.

The majority's justification for reaching a contrary result is misguided. While it is true that someone must have been deceived in order to sustain a private right of action for damages under the Consumer Fraud and Deceptive Business Practices Act, there is no requirement in the statute that it be the plaintiff. If others were deceived and acted in reliance on the deception in a way that harmed the plaintiff, the plaintiff is entitled to seek recovery for his damages under the Act even if he, himself, was not misled.

Our decision in *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359 (1998), does not hold otherwise. Although we rejected the plaintiff's claim in *Zekman* on the grounds that he had not been deceived by the defendant telephone company's actions (*Zekman*, 182 Ill. 2d at 376), that determination must be read in context. The plaintiff in *Zekman* was the only consumer involved, and, unlike the plaintiff in the present case, he did not assert that others were misled in a way that harmed him. Accordingly, if he was not deceived and did not act to his detriment on the basis of a deception, then no one did. That being so, there was no need for our court to go further and address the situation alleged in Oliveira's

complaint, namely, that the plaintiff's damages resulted from reliance by third parties on the defendant's deceptive conduct. In *Zekman*, there was simply no reliance by anyone. Without that, there could be no possible causal link between the defendant's actions and the damages the plaintiff sought to recover.

The cause of action asserted by Oliveira here does not suffer from the same impediment. According to Oliveira's complaint, there was reliance on Amoco's false representations. It came from the gasoline-purchasing public, who believed Amoco's spurious claims regarding the company's premium gasoline and bought that gasoline based on those claims. That reliance, and the purchases it induced, resulted in damage to Oliveira by increasing demand for the fuel, thereby driving the cost higher than what he and others would otherwise have had to pay. Accordingly, if the factual allegations in Oliveira's complaint are true, as we must assume them to be (see *Jackson v. South Holland Dodge, Inc.*, 197 Ill. 2d 39, 44-45 (2001)), there was a direct causal link between Amoco's misrepresentations and the actual damages Oliveira sustained.

That the reliance involved third parties rather than the individual plaintiff himself is a factor that sets Oliveira's claim apart from others we have considered under the Consumer Fraud and Deceptive Business Practices Act. The novelty of the claim, however, is no reason to turn it aside. Section 11a of the Act (815 ILCS 505/11a (West 1996)) expressly provides that the Act "shall be liberally construed" to effectuate its purposes. We have interpreted this to mean that the Act confers on Illinois courts a clear mandate to utilize the Act to the utmost degree to eradicate all forms of deceptive and unfair business practices and to provide appropriate remedies to defrauded consumers. *Warren v. LeMay*, 142 Ill. App. 3d 550, 563 (1986). Consistent with these principles, it is

incumbent on our court to remain open to innovative applications of the law's provisions. Consumer fraud takes endless forms, and it is imperative that we interpret the statute in such a way that it remains flexible enough to address new problems as they arise.

For the foregoing reasons, I would hold that Oliveira's complaint was sufficient to allege a private right of action for damages under the Consumer Fraud and Deceptive Business Practices Act and should not have been dismissed on the pleadings. I therefore dissent.