**In re Ronald W. LAVERDURE,
Debtor.**

**Ilene F. Goldstein, not individually but
as chapter 7 trustee of the estate of
Ronald W. Laverdure, Plaintiff,**

**v.**

**Ronald W. Laverdure; Nicole Laverdure; Katherine Laverdure; K Construction of Wauconda, Inc.; Vince Amato; and AVA Financial Corp., Defendants.**

**Bankruptcy No. 05 B 8111.
Adversary No. 07 A 153.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Dec. 3, 2008.

Christopher J. Horvay, Mark E. Leipold, Gould & Ratner LLP, Chicago, IL, for plaintiff Ilene F. Goldstein.

David S. Adduce, Kelley Olson, Michod, DeHaan & Richter, L.L.C., Chicago, IL, for defendants Vince Amato and AVA Financial Corp.

## MEMORANDUM OPINION

A. BENJAMIN GOLDGAR, Bankruptcy Judge.

This matter is before the court for ruling on the motion of defendants Vince Amato ("Amato") and AVA Financial Corp. ("AVA") to dismiss Count VI of the second amended complaint filed by chapter 7 trustee Ilene Goldstein ("Goldstein"). For the reasons discussed below, the motion will be granted, and Count VI will be dismissed as to Amato and AVA.

### 1. Background

Count VI of the second amended complaint alleges the following rather sketchy facts which, despite their sketchiness, are taken as true for purposes of the motion. *Killingsworth v. HSBC Bank Nev., N.A.,* 507 F.3d 614, 618 (7th Cir.2007). In 2002, debtor Ronald Laverdure ("Laverdure") acquired from his son William property located at 64 Hillburn Lane, Barrington, Illinois ("the Barrington Property"). On August 5, 2004, Laverdure quitclaimed his interest in the Barrington Property to his daughter Nicole. Laverdure received no consideration for the transfer.

On September 14, 2004, the same day that the deed transferring the Barrington Property from Laverdure to Nicole was recorded, AVA Financial commissioned an appraisal of the property. AVA is apparently a financial services company (the second amended complaint does not say), and Amato is its president and secretary. The appraisal was performed for the purpose of refinancing the mortgage on the Barrington Property. Although Nicole held title to the property, the appraisal identified Laverdure as the prospective borrower.

Laverdure filed this chapter 7 bankruptcy case on March 8, 2005, within a year of the transfer of the Barrington Property. Goldstein was appointed interim trustee.

On April 11, 2005, Nicole refinanced the $845,000 mortgage on the Barrington Property, obtaining a $945,000 loan from Emigrant Mortgage Co. Then, some months later, she sought to refinance the mortgage on the property again. On November 25, 2005, Nicole submitted a loan application to AVA and Amato. In March 2006, she then submitted another loan application—whether to AVA and Amato or someone else is not clear—in which she represented that she was employed by K Construction of Wauconda, Inc., earning $26,500 per month, or $318,000 per year. That representation was false. Nicole made the false representation to enable her to refinance the mortgage on the Barrington Property.

In April 2006, Nicole completed the second refinancing of the mortgage on the Barrington Property, obtaining a $1,260,000 loan from Homecomings Financial/GMAC ("Homecomings"). The refinancing of the mortgage generated net proceeds of $260,000 that Nicole deposited in her bank account and then, at Laverdure's direction, paid to K Construction and Katherine Laverdure. By refinancing the mortgages, Laverdure and Nicole managed to siphon off all of the equity in the Barrington Property.

In 2007, Goldstein commenced this adversary proceeding. Her second amended complaint has six counts. Most of the counts are directed at the Laverdures and K Construction and seek to recover the Barrington Property and avoid liens on it.

Count VI of the second amended complaint, however, is directed at AVA and Amato and purports to state a claim for damages under section 10a of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/10a(a) (2006). Goldstein alleges that AVA and Amato knew Laverdure had quitclaimed the property to Nicole (Compl. ¶ 34); that AVA and Amato knew Nicole's true income was insufficient to support the loans (*id.* ¶ 33); that Nicole intentionally misrepresented her earnings with the "cooperation and assistance" of AVA and Amato (*id.* ¶ 32); and that AVA and Amato "mislead [*sic*], concealed, suppressed or omitted" Nicole's true income intending to have the mortgage refinanced for the benefit of Laverdure (*id.* ¶ 61). As a result, Goldstein alleges, the bankruptcy estate

was damaged through the loss of the equity in the Barrington Property.

AVA and Amato now move to dismiss Count VI on a variety of grounds.

## 2. Discussion

Of the many grounds AVA and Amato advance for the dismissal of Count VI, only one needs to be addressed. AVA and Amato contend that Count VI fails to state a claim under the ICFA. They are right.

Section 10(a) of the ICFA grants a private right of action to anyone who suffers actual damage as a result of a violation of section 2. Section 2 of the ICFA outlaws, among other things, "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact...." 815 ILCS 505/2 (2006). A consumer injured by a violation of section 2 therefore states a claim under section 10(a) by alleging the following: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 180, 296 Ill.Dec. 448, 835 N.E.2d 801, 850 (2005); *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 149, 267 Ill.Dec. 14, 776 N.E.2d 151, 160 (2002); *see also Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir.2006).

In this case, Goldstein has not stated a claim under section 10a(a) for three reasons. First, Count VI fails to allege that AVA or Amato engaged in any sort of "deceptive act or practice." *Avery*, 216 Ill.2d at 180, 296 Ill.Dec. 448, 835 N.E.2d at 850. The deception here was instead committed by Nicole who misrepresented her income on the loan applications. AVA and Amato allegedly knew about the misrepresentation and failed to correct it—Goldstein avers that they "concealed, suppressed or omitted" Nicole's true income—but nowhere is it alleged that they made the misrepresentation. Goldstein argues that AVA and Amato "affirmatively aided and abetted" Nicole, but the Illinois Supreme Court has refused to recognize secondary liability under the ICFA. *See Zekman v. Direct Am. Marketers, Inc.*, 182 Ill.2d 359, 369, 231 Ill.Dec. 80, 695 N.E.2d 853, 859 (1998).

Second, even assuming AVA and Amato could be secondarily liable under the ICFA for Nicole's deceptive act or practice, Count VI fails to allege that Nicole misrepresented her income with the "intent that the plaintiff rely on the deception." *Avery*, 216 Ill.2d at 180, 296 Ill.Dec. 448, 835 N.E.2d at 850. The plaintiff here is trustee Goldstein. The misrepresentation was directed, not at Goldstein, but at Homecomings, the lender. Presumably it was Nicole's intent that Homecomings rely on the misrepresentation, since the idea was to induce the lender to make the loan, and presumably Homecomings did rely on it, since Homecomings made the loan. But Goldstein did not.

Third, and for essentially the same reasons, Count VI fails to allege damage to the plaintiff "proximately caused by the deception." *Avery*, 216 Ill.2d at 180, 296 Ill.Dec. 448, 835 N.E.2d at 850. To plead the element of proximate causation, a plaintiff " 'must allege that he was, in some manner, deceived.' " *Avery*, 216 Ill.2d at 200, 296 Ill.Dec. 448, 835 N.E.2d at 861 (quoting *Oliveira*, 201 Ill.2d at 155, 267 Ill.Dec. 14, 776 N.E.2d at 164). Be-

cause Nicole's misrepresentation was directed at Homecomings, not at Goldstein, the misrepresentation did not mislead and could not have misled Goldstein. A plaintiff who was not misled cannot state a fraud claim under the ICFA. *See, e.g., Gros v. Midland Credit Mgmt.,* 525 F.Supp.2d 1019, 1025 (N.D.Ill.2007). A plaintiff is especially likely not to have been misled if, as in this case, the misrepresentation or omission was not aimed at him in the first place. *See, e.g., Gredell v. Wyeth Labs., Inc.,* 367 Ill.App.3d 287, 292–93, 305 Ill.Dec. 160, 854 N.E.2d 752, 757 (2006).

▬ Goldstein might well concede all of this but argue that as trustee of Laverdure's bankruptcy estate, she has standing to bring the ICFA claim in Count VI on behalf of Homecomings, the deceived party. Had she made that argument, however, she would have been mistaken. Assuming for the moment that Homecomings is a creditor in Laverdure's bankruptcy (it appears Homecomings is actually Nicole's creditor, not Laverdure's), a chapter 7 trustee has standing only to bring claims of the estate, not claims of individual creditors. *Koch Refining v. Farmers Union Cent. Exchange, Inc.,* 831 F.2d 1339, 1348–49 (7th Cir.1987); *see also Steinberg v. Buczynski,* 40 F.3d 890, 893 (7th Cir.1994) (noting that a trustee is "confined to enforcing entitlements of the [debtor]" and "has no right to enforce entitlements of a creditor").

▬ Standing problems aside, Goldstein cannot assert Homecomings' rights under the ICFA as a consumer because Homecomings was not a "consumer" in the alleged transaction, at least not as the ICFA defines the term. Under the ICFA, a consumer is one who "purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade of business but for his use or that of

a member of his household." 815 ILCS 505/1(e) (2006). In the transaction in question, Homecomings did not purchase or contract for the purchase of any merchandise. It acted as a lender, which, as far as Goldstein alleges, was its trade or business. Goldstein cannot save her ICFA claim by asserting the rights of Homecomings as a consumer.

▬ Although the ICFA "is primarily concerned with protecting consumers, not business entities," *JMR Sales, Inc. v. MMC Elec. Am., Inc.,* No. 02 C 1642, 2002 WL 31269612, at *3 (N.D.Ill. Oct. 10, 2002), it is also possible for a non-consumer plaintiff to pursue a claim under section 10a(a). Non-consumers—generally businesses—"have standing to sue [under the ICFA] to redress competitive injury they suffer when other businesses deceive consumers." *Vulcan Golf, LLC v. Google Inc.,* 552 F.Supp.2d 752, 777 (N.D.Ill.2008) (internal quotation omitted). To make out such a claim, however, a non-consumer plaintiff must demonstrate "a nexus" between its alleged injuries and injuries to consumers. Non-consumer plaintiffs meet this test "by alleging that the conduct involves trade practices directed to the market generally or otherwise implicates consumer protection concerns." *Athey Prods. Corp. v. Harris Bank Roselle,* 89 F.3d 430, 437 (7th Cir.1996); *see also Vulcan Golf,* 552 F.Supp.2d at 777; *Nakajima All Co. Ltd. v. SL Ventures Corp.,* No. 00 C 6594, 2001 WL 641415, at *3 (N.D.Ill. June 4, 2001); *cf. DRL Enters., Inc. v. ePartners, Inc.,* 173 F.Supp.2d 818, 820 (N.D.Ill.2001) (holding that this requirement must be met in all ICFA cases, not just when a non-consumer is the plaintiff).

▬ If anything, Goldstein's claim under the ICFA as a non-consumer is more problematic than her claim as a consumer. Not only is the non-consumer claim defec-

tive in the same ways—no deceptive act or practice by AVA or Amato, no intent that Goldstein rely on any deceptive act or practice, no injury to Goldstein proximately caused by any deceptive act or practice, and no standing to assert the rights of Homecomings—but Goldstein fails to allege the requisite consumer nexus. Count VI nowhere avers that the deceptive practice was "directed to the market generally" or otherwise implicated "consumer protection concerns." *Athey*, 89 F.3d at 437. On the contrary, Count VI alleges a single transaction (two transactions, if the Emigrant Mortgage refinancing is counted) involving Nicole's submission of a loan application in which she intentionally misstated her earnings. That practice—if it can be called a practice—was directed at one or two lenders, not to "the market," and nothing in the second amended complaint suggests "consumer protection concerns" are at stake here.

 If the foregoing analysis seems artificial, it is because Count VI is not remotely the kind of claim that the ICFA contemplates. Claims under the ICFA generally fall into two classes: (1) claims of consumers complaining of deceptive acts or practices; and (2) claims by non-consumers against other non-consumers complaining of deceptive acts or practices directed at consumers. *See Vulcan Golf,* 552 F.Supp.2d at 777 (noting that a plaintiff "must either allege it was a consumer of the defendant or allege a nexus with Illinois consumers") (internal quotation omitted). The claim in Count VI is neither. In Count VI, a non-consumer (Goldstein) is complaining that two other non-consumers (AVA and Amato) somehow aided and abetted the deceptive act of a consumer (Nicole) directed at yet another non-consumer (Homecomings). Neither the ICFA nor any judicial decision interpreting it authorizes such a claim.

### 3. Conclusion

For these reasons, the motion of defendants Vince Amato and AVA Financial Corp. to dismiss Count VI of the second amended complaint is granted. Count VI is dismissed.