MARK OLIVEIRA, Plaintiff-Appellant, v. AMOCO OIL COMPANY, Defendant-Appellee.

Fourth District   No. 4—98—0199

Argued January 20, 1999.—Opinion filed February 9, 2000.—Rehearing denied April 11, 2000.

McCULLOUGH, J., specially concurring.

Joseph W. Phebus, of Phebus & Winkelmann, of Urbana, Michael B. Hyman (argued), of Much Shelist Freed Denenberg Ament Bell & Rubenstein, of Chicago, Edward A. Grossman and Seth Lesser, both of Bernstein, Litowitz, Berger & Grossmann, L.L.P., of New York, New York, and Ann D. White and Robert Eisler, both of Liebenberg & White, of Philadelphia, Pennsylvania, for appellant.

Richard C. Godfrey (argued), Scott W. Fowkes, and Steven C. Coberly, all of Kirkland & Ellis, and Timothy L. Moorehead, of Amoco Oil Company, both of Chicago, and Richard L. Thies and John E. Thies, both of Webber & Thies, P.C., of Urbana, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Mark Oliveira, appeals the dismissal of his complaint based on the Illinois Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 *et seq.* (West 1996)) against defendant, Amoco Oil Company, and also appeals from the denial of class certification. Plaintiff contends (1) the trial court erred in dismissing his complaint because it failed to state a cause of action by finding he failed to allege proximate cause under the Act; and (2) the trial court erred and abused its discretion in denying class certification to his cause of action by ruling the Act did not apply to consumers outside Illinois, by not finding Illinois law applied, and failing to find common issues of fact or law predominated. We affirm in part and reverse in part.

## I. BACKGROUND

Plaintiff is an Illinois consumer who first brought a complaint against defendant in November 1996 seeking certification as a class action on behalf of a nationwide class of all purchases of "Amoco Silver and/or Amoco Ultimate gasoline" (Amoco premium gasolines). This complaint alleged defendant's advertisements for its premium gasolines were false and plaintiff and others had purchased those premium brands because of the ads. Defendant asserted four causes of action: (1) breach of express warranty; (2) breach of implied warranty; (3) fraudulent misrepresentation; and (4) a violation of the Act.

At an evidentiary hearing in March 1997, the trial court denied class certification because, whether Illinois' or another state's law was applicable, the cause of action based upon reliance on advertisements required separate factual findings as to each class member's reasons for purchasing gasoline.

Plaintiff filed an amended complaint in May 1997, in which he dropped all claims except consumer fraud under the Act. The amended complaint alleges plaintiff and the class he claims to represent have a claim under the Act and were damaged simply by purchasing Amoco premium gasolines regardless of whether they saw the advertisements plaintiff alleges were misrepresentations. Plaintiff requested certification of a class he defined as "[a]ll retail purchasers in the United States who purchased Amoco Ultimate and/or Amoco Silver gasoline during the class period, November 6, 1991, through January 2, 1996."

The amended complaint alleged defendant began a multistate advertising campaign on November 6, 1991, which falsely represented:

"(A) Amoco Ultimate gasoline is superior to all other brands of premium gasoline with respect to engine performance or environmental benefits because it is refined more than all other such brands;

(B) The clear color of Amoco Ultimate gasoline demonstrates the superior engine performance and environmental benefits Amoco Ultimate provides compared to other premium brands of gasolines that are not clear in color;

(C) A single tankful of Amoco Silver or Ultimate gasoline will make dirty or clogged fuel injectors clean;

(D) Amoco Silver or Ultimate gasoline provides superior fuel injector cleaning compared to other brands of gasoline; and

(E) Automobiles driven more than 15,000 miles with regular gasoline generally suffer from lost engine power or acceleration which will be restored by the higher octane of Amoco Silver gasoline."

The complaint alleges defendant knew these statements were untrue. While not included as an allegation in the complaint, the end date chosen for the class period, January 2, 1996, was the effective date of a consent decree between defendant and the Federal Trade Commission (FTC) as a result of which defendant stopped its advertising. The consent decree settled an action filed against defendant by the FTC based upon the same alleged deceptive advertising campaign.

Plaintiff alleges the result of defendant's deceptive advertising campaign was to increase demand for its premium gasoline thereby enabling it to command an inflated and otherwise unsustainable price for the premium gasolines that all consumers of the gasoline paid whether or not they had relied upon or seen the advertising campaign. Thus, plaintiff argues all consumers who purchased defendant's

premium gasolines during the class period were damaged by defendant's misrepresentations in its advertising campaign.

In support of his motion to certify a class action, plaintiff submitted the affidavit of Dr. William R. Latham III, professor of economics at the University of Delaware, and Dr. James E. Haefner, professor of advertising at the University of Illinois. Dr. Haefner's affidavit had to do with the effects of advertising on consumer demand.

In Dr. Latham's initial and second affidavit, he assumed (1) defendant's premium gasoline did not provide the benefits touted by its advertising campaign and (2) the ad campaign had an effect on consumers and influenced their choices. He then stated, due to the increased demand created by the advertising, defendant was able to charge a higher rate for its premium gasolines than without the advertising. This higher rate was paid by all consumers and not just those who heard and relied upon defendant's advertising. Dr. Latham stated it can be determined, using econometric analysis, the precise extent of the inflated price attributable to defendant's advertising.

Defendant filed a motion to strike the affidavits of both Latham and Haefner. Defendant argued Latham's opinions were premised on assumptions contrary to undisputed facts; his theory of liability was novel and contrary to Illinois law; and his opinions were speculative, unsupported by evidence and lacking foundation for admissibility. Defendant provided affidavits from experts of its own that criticized Latham's theories as not supported by the facts, which showed that during the class period demand for defendant's premium gasolines actually decreased, as did prices charged. Defendant argued Latham's theory did not comply with the requirements of the Act and was both (1) too speculative and (2) an example of "fraud on the market" theory, which has been adopted only in securities fraud cases and not in cases of consumer fraud.

As Dr. Latham's second affidavit pointed out, however, he was not contending demand for defendant's premium gasoline actually increased as compared to previous time periods or that the prices it charged increased from previous periods. Instead, Latham's contention is defendant's apparently deceptive advertising kept demand and prices higher during the class period than they would have been otherwise. He does not disagree other factors also influence demand and prices charged but maintains an econometric analysis can be designed to isolate the effect of defendant's advertising on the actual demand levels and prices during the relevant time period.

Defendant also filed motions to dismiss plaintiff's complaint pursuant to section 2—615 of the Civil Practice Law (Law) (735 ILCS 5/2—615 (West 1996)) and section 2—619 of the same Law. Defendant also contested plaintiff's second motion to certify the class.

The trial court denied defendant's motion to strike the affidavits of Drs. Latham and Haefner and the section 2—619 motion. The court found plaintiff had no cause as to Amoco Silver gasoline because he did not actually purchase it but stated the case was not being dismissed on that ground. Instead, the trial court granted defendant's section 2—615 motion because plaintiff's complaint did not plead proximate causation adequately under the Act. The court rejected the marketing theory pleaded by plaintiff, *i.e.*, defendant's misleading advertising caused inflated prices for its gasoline. The trial court also denied certification of a class action stating again it rejected the "marketing scheme theory" proposed by plaintiff. The court noted a lack of predominance of common issues of fact because of the variables that would cause a consumer to purchase gasoline, including whether a consumer believed defendant's advertising claims. The court also found no common questions of law existed because the Act did not extend to consumers outside Illinois. This appeal followed.

## II. ANALYSIS

### A. Motion To Strike Portions of Reply Brief

We first address defendant's motion to strike portions of plaintiff's reply brief. Defendant contends in its opening brief plaintiff claimed the trial court's denial of class certification and dismissal of the complaint were erroneous for three reasons. However, defendant argues plaintiff, by reply brief, raised several arguments originally raised in the trial court but not in plaintiff's opening brief. Defendant notes Supreme Court Rule 341(e)(7) provides any points not argued in an appellant's opening brief "are waived and shall not be raised in the reply brief." 155 Ill. 2d R. 341(e)(7). Defendant argues that by raising these new points for the first time in his reply brief plaintiff is attempting to preclude it from responding to those arguments.

■ We believe the arguments raised by plaintiff in his reply brief were in response to arguments raised by defendant in its opening brief. Defendant was not precluded from responding to arguments raised only in reply but actually invited them itself. Supreme Court Rule 341(g) provides an appellant may respond to arguments presented in the appellee's brief. 155 Ill. 2d R. 341(g). An appellee may argue any point supported by the record but an appellant is under no obligation to anticipate every argument an appellee might raise and address it in his opening brief. *Rome v. Commonwealth Edison Co.*, 81 Ill. App. 3d 776, 780, 401 N.E.2d 1032, 1034-35 (1980). Therefore, defendant's motion to dismiss portions of plaintiff's reply brief is denied.

## B. Propriety of the Section 2—615 Dismissal

Plaintiff appeals the dismissal of his cause of action and the denial of the class certification. Plaintiff argues, first, the trial court erred in finding he did not state a cause of action under the Act. On appeal from a motion to dismiss a complaint under section 2—615, the standard of review is whether the complaint alleged sufficient facts which, if proved, would entitle the plaintiff to relief. *Charles v. Seigfried*, 165 Ill. 2d 482, 485-86, 651 N.E.2d 154, 156 (1995).

Section 2 of the Act delineates an unlawful practice as follows:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 1996).

An action for damages under the Act may be brought pursuant to section 10a(a). "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person." 815 ILCS 505/10a(a) (West 1996). The definition of "person" under the Act includes a corporation, company, or other business entity. 815 ILCS 505/1(c) (West 1996). Thus, defendant is included as a person who could commit a violation of the Act.

The Act has been construed liberally to give effect to the legislative goals behind its enactment. *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill. App. 3d 995, 1001-02, 574 N.E.2d 760, 764 (1991). The Act's policy is to give broader protection than common law fraud by prohibiting any "deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment *** in the conduct of any trade or commerce." 815 ILCS 505/2 (West 1996); *Eshaghi*, 214 Ill. App. 3d at 1001-02, 574 N.E.2d at 764. The standard of proof for a violation of the Act is lenient as it does not require "any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 1996); *Eshaghi*, 214 Ill. App. 3d at 1002, 574 N.E.2d at 764.

A cause of action under section 2 of the Act has three elements: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that plaintiff rely on the deception, and (3) the deception occurred during a course of conduct involving trade or commerce. *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 373, 695

N.E.2d 853, 860 (1998); *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593 (1996); *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 75, 643 N.E.2d 734, 754 (1994) (hereinafter *Martin II*). Although the defendant's intent that its deception be relied on is an element of the offense, the Supreme Court of Illinois has stated no actual reliance is required to state a cause of action under the Act. *Connick*, 174 Ill. 2d at 501, 675 N.E.2d at 593; *Martin II*, 163 Ill. 2d at 76, 643 N.E.2d at 754; *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 542, 607 N.E.2d 194, 198 (1992). *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill. App. 3d 1032, 1041, 594 N.E.2d ·1355, 1362 (1992), holds reliance is required for a private cause of action as opposed to those brought under the Act by the Attorney General. In support of its ruling, however, the *Duran* court relied on language in section 10a of the Act that deals with proximate causation: "Any person who suffers damage as a result of a violation of this Act \*\*\* may bring an action \*\*\*." Ill. Rev. Stat. 1989, ch. 121½, par. 270a(a) (now 815 ILCS 505/10a(a) (West 1996)).

While reliance is not required under the Act, a plaintiff must demonstrate the defendant's consumer fraud proximately caused his injuries. *Zekman*, 182 Ill. 2d at 373, 695 N.E.2d at 860-61; *Connick*, 174 Ill. 2d at 501, 675 N.E.2d at 593. The required allegation of proximate causation has been termed minimal, however, as that determination is best left to the trier of fact. *Connick*, 174 Ill. 2d at 504, 675 N.E.2d at 595.

Defendant contends Illinois law under the Act requires a plaintiff to allege two components of causation: (1) "direct" or "proximate" causation and (2) "but for" or "transactional" causation. These two types of causation apparently originated in federal securities fraud cases. See *Martin II*, 163 Ill. 2d at 60, 68-69, 643 N.E.2d at 747, 751; *Adler v. William Blair & Co.*, 271 Ill. App. 3d 117, 128-29, 648 N.E.2d 226, 234 (1995); *Bastian v. Petren Resources Corp.*, 271 Ill. App. 3d 232, 235, 648 N.E.2d 165, 167 (1995). The court in *Bastian* defined "transaction causation" as occurring when defendant's conduct caused plaintiff to enter into the transaction and "loss causation" as the reasons for the transaction's (investment's) decline in value or the proximate cause of plaintiff's loss. *Bastian*, 271 Ill. App. 3d at 235, 648 N.E.2d at 167.

These two types of causation are only cited in securities fraud cases and not in *Zekman* and *Connick*, where only the issue of proximate cause is discussed as required under the Act. Defendant's argument concerning the necessity of "but for" causation appears to be a reference to reliance, which the supreme court has repeatedly stated is not required under the Act. Reliance was an important part

of a common law fraud cause of action, but the elements of common law fraud need not be proved to recover under the Act as the definition of fraudulent practice is in the Act itself. *People ex rel. Fahner v. American Buyers Club, Inc.*, 115 Ill. App. 3d 759, 761, 450 N.E.2d 904, 906 (1983).

Since "but for" causation is not necessary because actual reliance is not necessary, the question under plaintiff's theory becomes whether defendant made misleading statements in its advertising that led to an increase in demand and inflated prices that were paid by all. Defendant argues, even if the advertising was misleading, it did not proximately cause any damage to plaintiff. Defendant contends it provided affidavits to counter those supplied by plaintiff and which provide evidence the overall demand for its premium gasolines went down, as did prices during the relevant period; therefore, its advertising did not proximately cause any damages to plaintiff.

As Dr. Latham stated in his second affidavit filed by plaintiff, however, the question is not whether demand for the premium gasolines went down but whether demand and prices were artificially high for the relevant time period due to misleading advertising. In other words, without the advertising, would the demand and prices of defendant's premium gasolines have been *even lower* during the relevant time period? Dr. Latham contends he can isolate the variables that go into fueling the demand, calculate the amount of the artificially high prices during the relevant period attributable to the advertising, and then calculate the amount plaintiff overpaid, therefore showing defendant's misleading advertising proximately caused plaintiff and anyone else who bought defendant's premium gasoline to pay inflated prices.

Defendant further argues the Act requires a plaintiff to allege with specificity misrepresentations were made and to whom they were made. Defendant cites *Connick* for this proposition. Review of *Connick*, however, shows its reference to allegations, including to whom specific misrepresentations were made, was in relation to pleading a cause of action for common law fraud, which requires allegations of misrepresentations, as well as when they were made, who made them, and to whom they were made. *Connick*, 174 Ill. 2d at 496-97, 675 N.E.2d at 591. As we noted, it is not necessary to prove the elements of common law fraud to recover under the Act (*American Buyers Club*, 115 Ill. App. 3d at 761, 450 N.E.2d at 906) because the elements of a claim under the Act are as set forth above and stated in *Zekman*, 182 Ill. 2d at 373, 695 N.E.2d at 860. See also *Connick*, 174 Ill. 2d at 501, 675 N.E.2d at 593; *Martin II*, 163 Ill. 2d at 75, 643 N.E.2d at 754.

Defendant next contends plaintiff's cause of action does not fit

under the Act since, pursuant to its provisions, only material misrepresentations are actionable. Defendant cites *Bass v. Prime Cable of Chicago, Inc.*, 284 Ill. App. 3d 116, 127, 674 N.E.2d 43, 51 (1996), and *Mackinac v. Arcadia National Life Insurance Co.*, 271 Ill. App. 3d 138, 141, 648 N.E.2d 237, 239 (1995). These cases list "material fact" as an element of a cause of action under the Act based on its inclusion in the definition of deceptive act or practice under section 2 of the Act. 815 ILCS 505/2 (West 1996). The materiality discussion centers on whether the misrepresentations actually caused damages to the plaintiff. In *Bass*, plaintiff continued to use the cable services provided by defendant after actual knowledge of the alleged misrepresentations over the cost of the services and an agreement on the part of plaintiff to pay the additional costs. *Bass*, 284 Ill. App. 3d at 127, 674 N.E.2d at 51-52. In *Mackinac*, defendant had to know plaintiff had a preexisting condition that would form the basis of a requirement to inform her of the preexisting restriction in its insurance policy; without a reason to disclose the restriction, defendant did not mislead plaintiff by failing to disclose. *Mackinac*, 271 Ill. App. 3d at 143, 648 N.E.2d at 240.

■ A "material fact" exists where (1) a plaintiff would have acted differently had he or she been aware of the information, or (2) it concerned the type of information upon which he or she would be expected to rely in making a decision to act. *Connick*, 174 Ill. 2d at 505, 675 N.E.2d at 595; *Mackinac*, 271 Ill. App. 3d at 141, 648 N.E.2d at 239. Defendant's advertised assertions that its premium gasolines were better for the environment and a consumer's car are material facts because consumers would be expected to rely on those facts when deciding whether to purchase gasoline. It is not necessary under the Act that plaintiff actually relied on those asserted facts.

In reviewing the legal adequacy of a complaint, we must interpret the allegations of the complaint in the light most favorable to plaintiff. *DiBenedetto v. Flora Township*, 153 Ill. 2d 66, 69-70, 605 N.E.2d 571, 573 (1992). The complaint must allege facts which, if proved, would entitle plaintiff to relief. *Charles*, 165 Ill. 2d at 485-86, 651 N.E.2d at 156. We do not decide the likelihood of plaintiff proving his case but only that he is entitled to relief upon proving the facts alleged.

■ We find plaintiff's complaint adequately stated a cause of action for consumer fraud under the Act. First, plaintiff's complaint adequately pled a deceptive act or practice by defendant. Specifically, plaintiff alleged defendant represented in its advertising that its premium gasolines had special features that would produce increased performance in automobiles and had environmental benefits and that this information was false.

Second, plaintiff alleged defendant intended purchasers to rely on

these statements, which he claims is evident due to the representations themselves and the fact they were in radio, television, and print ads. Third, plaintiff alleged these statements were made in trade or commerce. Fourth, plaintiff has alleged proximate cause. Plaintiff's purchases are alleged to have been made after the alleged fraudulent statements were made and the statements caused higher prices than what would have occurred for the period in question for defendant's premium gasolines but for the advertisements.

## C. Propriety of Class Certification Denial

We next consider whether class certification was improperly denied. Whether to certify a class action is a matter within the sound discretion of the trial court, and its decision will be reversed only upon a showing of a clear abuse of discretion or the application of impermissible legal criteria. *Schlenz v. Castle*, 84 Ill. 2d 196, 203, 417 N.E.2d 1336, 1339 (1981).

A class action may not be certified unless the trial court finds:

"(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3) The representative parties will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2—801 (West 1996).

In this case the trial court denied class certification because it rejected plaintiff's "marketing scheme theory." The court found a lack of predominating common issues of fact or law because even Dr. Latham admitted a number of determinants exist, such as income, location of service stations, or prices of other goods and services, that would impact a consumer's decision to buy gasoline in addition to whether the consumer believed defendant's advertising. The court found too many variables existed to find questions of fact common to the class or that the common questions would predominate over other questions affecting individual members. The court also found the Act did not extend to persons who were not Illinois consumers; therefore, there could be no common questions of law.

Plaintiff contends, first, the trial court erred in finding the Act did not apply to consumers outside Illinois. He claims the language in the Act makes no distinction between Illinois residents and nonresidents. 815 ILCS 505/2 (West 1996). He notes the Act's definition of "person[s]" covered includes "*any* natural person or his legal repre-

sentative, partnership, corporation (domestic and foreign), company, trust, business entity or association." (Emphasis added.) 815 ILCS 505/1(c) (West 1996). Finally, he notes section 1(f), defining "trade" and "commerce," refers to trade or commerce directly or indirectly affecting the people of Illinois. 815 ILCS 505/1(f) (West 1996).

The Supreme Court of Illinois has not ruled specifically on this issue. It has noted the Act's purpose is to protect Illinois consumers, borrowers, and businessmen. *Scott v. Association for Childbirth at Home, International*, 88 Ill. 2d 279, 288, 430 N.E.2d 1012, 1017 (1981). Plaintiff cites *Miner v. Gillette Co.*, 87 Ill. 2d 7, 428 N.E.2d 478 (1981), where a class action was certified that included nonresidents of Illinois and involved several counts including one based on the Act. Whether the Act applied to nonresident consumers was not an issue in the case, however, and the court made no ruling on the subject. Plaintiff also cites *Gordon v. Boden*, 224 Ill. App. 3d 195, 202, 586 N.E.2d 461, 466 (1991), where a class action based on the Act was certified at the appellate court level. Finally, plaintiff cites *Martin v. Heinold Commodities, Inc.*, 117 Ill. 2d 67, 510 N.E.2d 840 (1987) (hereinafter *Martin I*), where the supreme court certified a class action under the Act that included non-Illinois plaintiffs but its decision was based on the following: (1) the contracts containing the deceptive statements were all executed in Illinois; (2) the contract contained express choice of law and forum selection clauses specifying any litigation would be conducted in Illinois under Illinois law; and (3) complaints regarding the defendant's performance were to be directed to its Chicago office. *Martin I*, 117 Ill. 2d at 82-83, 510 N.E.2d at 847.

Both plaintiff and defendant refer to "Illinois cases" that have ruled on the issue but they are actually federal district court cases that applied Illinois law and attempted to divine how the Supreme Court of Illinois would rule if confronted with the issue. Of these cases, more of them found the supreme court would not apply the Act to nonresident consumers (see *Hastings v. Fidelity Mortgage Decisions Corp.*, 984 F. Supp. 600, 615 (N.D. Ill. 1997); *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 340 (N.D. Ill. 1997); *Swartz v. Schaub*, 818 F. Supp. 1214, 1214 (N.D. Ill. 1993); *Seaboard Seed Co. v. Bemis Co.*, 632 F. Supp. 1133, 1140 (N.D. Ill. 1986)) than found the court would apply the Act to nonresident consumers (see *Nichols Motorcycle Supply Inc. v. Dunlop Tire Corp.*, 913 F. Supp. 1088, 1140 (N.D. Ill. 1995); *Fry v. UAL Corp.*, 136 F.R.D. 626, 637 (N.D. Ill. 1991)).

Language in *Scott* refers to the Act's purpose as protecting Illinois consumers (*Scott*, 88 Ill. 2d at 288, 430 N.E.2d at 1017). The language of the Act itself refers to trade or commerce under the Act as "directly or indirectly affecting the people of this State." 815 ILCS 505/1(f)

(West 1996). In the case of an out-of-state consumer, the trade or commerce referred to by the Act occurred outside Illinois where the putative class members lived, purchased gasoline, and were allegedly harmed. They had no contact with Illinois.

Plaintiff argues the idea for the deceptive advertising campaign originated in Illinois, where defendant had its corporate headquarters. However, the suggestion defendant's fraud scheme "emanated" from employees of defendant in Illinois does not constitute trade or commerce affecting Illinois consumers. The Act does not seek to punish evil thoughts but actual deceptive acts and practices. Absent a specific ruling from the supreme court that the Act applies to out-of-state consumers, we decline to find it applies as the court has stated the Act's purpose is to protect Illinois consumers. *Scott*, 88 Ill. 2d at 288, 430 N.E.2d at 1017.

Plaintiff next argues the trial court improperly concluded Illinois law may not be applied to non-Illinois class members' claims. Illinois law may be applied to the nationwide class only if Illinois has significant contact or aggregation of contacts to the claims asserted by each member of the class. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22, 86 L. Ed. 2d 628, 648, 105 S. Ct. 2965, 2979 (1985). Plaintiff argues defendant is headquartered in Illinois, the advertising campaign was conceived of and approved and disseminated in Illinois. He argues no other state has more significant contacts and Illinois has more than sufficient contacts to ensure application of its law is neither arbitrary nor capricious.

However, contrary to plaintiff's assertions, defendant's contacts alone do not determine whether Illinois law will be applied. Illinois has no authority to regulate out-of-state transactions affecting non-Illinois citizens, such as the purchase of gasoline, and has no interest in doing so. Further, while Illinois has an interest in seeing Illinois corporations do not engage in deceptive practices, its Consumer Fraud Act does not apply to consumers outside Illinois or business conducted outside Illinois. While the Act does not require reliance, other states' courts may have found their consumer fraud acts require reliance as an element of a claim. See, *e.g.*, *Gross v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 303 N.J. Super. 336, 344-46, 696 A.2d 793, 796-98 (1997). Further, in states without a consumer fraud act, a plaintiff would need to rely on common law fraud, which does require reliance to state a cause of action.

Where another state's consumer fraud act requires reliance to state a claim, what is unlawful in Illinois—false or misleading advertising whether or not it was relied upon by a given consumer—may not be unlawful in another state. Illinois may not impose sanctions on

violators of its law with the intent of changing the violator's conduct in other states if it was lawful where it occurred and had no impact on Illinois or its residents. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 572-73, 134 L. Ed. 2d 809, 824-25, 116 S. Ct. 1589, 1597 (1996).

As the purchase of gasoline in his or her respective state and the determinants of the price paid for it were what triggered each potential plaintiff's cause of action, something that does not affect Illinois commerce or consumers, no significant connection to Illinois justifies the use of Illinois law. The trial court did not abuse its discretion in finding Illinois law did not apply to nonresident consumers.

Without the use of Illinois law to govern the class action, the claims of each putative plaintiff would be governed by the laws of each state where the gasoline was purchased. There is no common law to apply. As to predominance of common facts, the trial court found the question of each individual plaintiff's reliance on defendant's advertising would govern the claims. As we noted, individual reliance is unnecessary under the Act. However, without the Act governing claims from out-of-state plaintiffs, reliance may very well be an issue either under another state's consumer fraud act or under common law fraud. The claims of out-of-state plaintiffs would require individual fact finding and no predominance of common facts exists. The trial court did not abuse its discretion in finding no predominance of common issues of fact or law.

### III. CONCLUSION

We reverse the trial court's dismissal of plaintiff's cause of action but affirm its refusal to certify the nationwide class action requested by plaintiff.

Affirmed in part and reversed in part.

MYERSCOUGH, J., concurs.

JUSTICE McCULLOUGH, specially concurring:

Because this is a review of the trial court's order of dismissal pursuant to section 2—615, and not a determination of likelihood of plaintiff's proving his case, I concur. Treating this as a section 2—615 motion, there is no need to consider the affidavits of the parties. The affidavits are appropriately considered in a summary judgment posture.