LISA M. SHANNON *et al.*, Plaintiffs-Appellants, v. BOISE CASCADE, Defendant-Appellee.

Fourth District    No. 4—01—0143

Opinion filed January 31, 2003.

TURNER, J., dissenting.

Nancy J. Glidden, of Phebus & Winkelmann, of West Chester, Pennsylvania, and Joseph W. Phebus, Steven D. Wright, and Gary D. Forrester, all of Phebus & Winkelmann, of Urbana, for appellants.

John E. Thies and Lara L. Quivey, both of Webber & Thies, P.C., of Urbana, and Steve Y. Koh, of Perkins Coie, L.L.P., of Seattle, Washington, for appellee.

JUSTICE COOK delivered the opinion of the court:
■ We filed our original decision in this case February 20, 2002, and modified it on denial of rehearing on April 16, 2002. *Shannon v. Boise Cascade*, 328 Ill. App. 3d 621, 766 N.E.2d 1136 (2002) (hereinafter original decision). On October 25, 2002, the supreme court, in the exercise of its supervisory authority, directed us to vacate that judgment and to reconsider in light of *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 776 N.E.2d 151 (2002). *Shannon v. Boise Cascade*, No. 93933 (October 2, 2002) (nonprecedential supervisory order). We have done so, and again reverse and remand, reinstating our original decision.

In *Oliveira*, the plaintiff alleged that Amoco had made false representations concerning its premium gasolines, which representations increased consumer demand, allowing Amoco to charge an inflated price, and thereby caused actual damage to a class of purchasers of which plaintiff was a member. Plaintiff did not allege, however, that defendant's advertisements induced him to buy the gasoline or that he was deceived by the ads. *Oliveira*, 201 Ill. 2d at 140, 776 N.E.2d at 155. Under the *Oliveira* plaintiff's " 'market theory' " of causation, even purchasers of Amoco's gasolines who saw the ads but never believed them, *i.e.*, those who " 'knew the truth,' " would have valid claims under section 10a(a) of the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 through 12 (West 1996)). *Oliveira*, 201 Ill. 2d at 155, 776 N.E.2d at 164.

The supreme court determined that its decision in *Oliveira* was controlled by its decision in *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 695 N.E.2d 853 (1998). In *Zekman*, the supreme court had held there was no genuine issue of material fact whether alleged violations of the Act by AT&T proximately caused plaintiff's damage, because plaintiff's testimony demonstrated that he was not deceived by AT&T's actions. *Oliveira*, 201 Ill. 2d at 154, 776 N.E.2d at 163. The complaint in *Oliveira* suffered from the same deficiency: "[p]laintiff does not allege that he was, in any manner, deceived by defendant's advertisements. Plaintiff does not allege that he received anything other than what he expected to receive when he purchased defendant's gasoline." *Oliveira*, 201 Ill. 2d at 154, 776 N.E.2d at 163.

"[T]o properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the Act, a plaintiff must allege that he was, in some manner, deceived." *Oliveira,* 201 Ill. 2d at 155, 766 N.E.2d at 164.

There are differences between the present case and *Oliveira.* In the present case, plaintiffs do not simply complain of price; plaintiffs do complain that the product they purchased was defective, that it was something other than what they expected to receive. This is not a case where purchasers who saw the ads but never believed them, purchasers who "knew the truth," would nevertheless have valid claims. As discussed in our original decision, below, a purchaser who buys the home at a discount because of known problems with the siding has not been damaged and would have no claim.

It is sometimes possible to rely on misrepresentations without reading the documents in which such misrepresentations are made. The purchaser of an automobile does not read all the representations made by the manufacturer of the tires; he counts on the automobile manufacturer to do so, but he relies on them just the same. Purchasers of homes employ builders, architects, and engineers to examine the product literature for them; and it is a mistake to say that home purchasers do not rely on that product literature. The fact is noted in *Oliveira* that plaintiff did not "claim that he saw, heard[,] or read any of the allegedly deceptive advertisements." *Oliveira,* 201 Ill. 2d at 140, 776 N.E.2d at 155. That fact was important to show whether plaintiff was in fact deceived, whether plaintiff received anything other than what he expected to receive. The *Oliveira* plaintiff, however, did not care whether his engine performance was improved or whether the environment was benefitted. The only way the *Oliveira* plaintiff was harmed was by the price. The *Oliveira* plaintiff did not expect others to review the claims made by gasoline producers on his behalf. *Oliveira* does not lay down the inflexible rule that plaintiff must have read the ads. Under *Oliveira,* a plaintiff must allege, not that he read the ads, but only "that he was, *in some manner,* deceived." (Emphasis added.) *Oliveira,* 201 Ill. 2d at 155, 776 N.E.2d at 164. Plaintiff does so here.

Justice Turner's dissent suggests that there are problems with the allegations of plaintiffs' complaint, that plaintiff does not "allege that he was, in some manner, deceived." *Oliveira,* 201 Ill. 2d at 155, 776 N.E.2d at 164. (Plaintiffs allege, however, that defendant's deceptive representations resulted in the use of defendant's siding on their homes, which proximately caused damage to them.) *Oliveira* was decided on a motion to dismiss directed to the pleadings. The present case, however, is decided on a motion for summary judgment, where it

is Boise Cascade's burden to show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Boise Cascade has not shown that plaintiffs were not, in some manner, deceived. The trial court granted summary judgment to Boise Cascade because "it is undisputed that the plaintiffs did not know that the defendant manufactured the siding which was on their homes at the time they purchased the homes." *Oliveira* does not hold it impossible for plaintiffs to recover under the facts of the present case.

Our original decision follows.

This action is brought under the Act (Ill. Rev. Stat. 1983, ch. 121½, pars. 261 through 272 (now see 815 ILCS 505/1 through 12 (West 2000))). The complaint seeks a determination that the action be maintained as a class action. 735 ILCS 5/2—802(a) (West 2000). The circuit court entered summary judgment in favor of defendant, Boise Cascade. We reverse and remand.

## I. BACKGROUND

Plaintiffs, Lisa M. Shannon, Timothy J. Shannon, Brian K. Connelly, Susan West, Shapour Arami, Bruce Fischer, and James Torongo, own homes in Du Page County, which were built in 1983 or 1984. Plaintiffs Fischer and Torongo are the original owners of their homes, purchasing them in 1984. Most of the other plaintiffs purchased their homes in 1997, one in 1991. Boise Cascade manufactured an exterior composite wood siding product that was installed on the homes when they were built. Boise Cascade began manufacturing its composite siding about 1960 but has not manufactured, sold, or marketed the siding since 1984.

Plaintiffs' second-amended complaint, with amended count I, alleges a violation of section 2 of the Act (Ill. Rev. Stat. 1983, ch. 121½, par. 262 (now see 815 ILCS 505/2 (West 2000))). The complaint alleges that Boise Cascade's composite siding was subject to rotting, buckling, warping, wick moisture, and general failure. The complaint alleges that Boise Cascade deceptively advertised the composite siding, falsely representing that the siding was "of inherent good quality," "durable," "low maintenance," and "looked and performed comparably to natural wood siding." The complaint also alleges that Boise Cascade fraudulently and deceptively failed to disclose that its siding "performed poorly in the field," with a "high rate of failure," was sensitive to moisture, and required "highly particularized maintenance."

The circuit court entered summary judgment for Boise Cascade, noting that while further discovery may be necessary to determine whether Boise Cascade's marketing activity was false, misleading, or otherwise deceptive, the court could address the factual premise of the

motion that "seven of the eight plaintiffs neither saw, heard, or otherwise were aware of the defendant's advertising," which was strictly a legal issue. Although plaintiff Fischer bought his home new, he did not know that his siding was manufactured by Boise Cascade. Plaintiff Torongo knew that the siding had been manufactured by Boise Cascade, but there was no evidence he was aware of any representations by Boise Cascade. The court held that Torongo and Fischer could not rely on the representations of the builder-seller of their homes, as there was no evidence the builder-seller was an agent of Boise Cascade. The circuit court did refuse to enter summary judgment against plaintiff Jack B. Babel, who bought his home new in 1984, knew the siding was manufactured by Boise Cascade, and had read some of Boise Cascade's publications prior to making his purchase. The circuit court rejected Boise Cascade's argument that its representations were only nonactionable "puffing."

The circuit court made a finding under Supreme Court Rule 304(a) that there is no just reason to delay enforcement or appeal. 155 Ill. 2d R. 304(a). Plaintiffs appeal, arguing that the circuit court improperly analyzed the elements of a cause of action under the Act, in particular the concepts of "materiality" and "proximate causation." For purposes of this appeal we assume, as did the circuit court, that Boise Cascade's composite siding was defective, that Boise Cascade's representations were deceptive, and that Boise Cascade concealed facts with the intent that others rely thereon.

## II. ANALYSIS

■ Although the use of summary judgment aids in the expeditious disposition of a lawsuit, "[s]ummary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992). A motion for summary judgment is properly granted, therefore, only when the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000). In considering a summary judgment motion, the court has a duty to construe the evidence strictly against the movant and liberally in favor of the nonmoving party. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292, 757 N.E.2d 481, 491 (2001). In appeals from orders granting summary judgment, our review is *de novo*. *Travelers*, 197 Ill. 2d at 292, 757 N.E.2d at 491.

### A. The Consumer Fraud and Deceptive Business Practices Act

■ Section 2 of the Act declares "[u]nfair methods of competition"

and "unfair or deceptive acts or practices" to be "unlawful whether any person has in fact been misled, deceived[,] or damaged thereby." Ill. Rev. Stat. 1983, ch. 121½, par. 262 (now see 815 ILCS 505/2 (West 2000)). Among those methods and practices, two are specifically described: (1) "the use or employment of any deception, fraud, false pretense, false promise, [or] misrepresentation," and (2) "the concealment, suppression[,] or omission of any material fact, with intent that others rely upon the concealment, suppression[,] or omission of such material fact." Ill. Rev. Stat. 1983, ch. 121½, par. 262 (now see 815 ILCS 505/2 (West 2000)).

"Any person who suffers actual damage as a result of a violation of *** this Act committed by any other person may bring an action against such person." Ill. Rev. Stat. 1983, ch. 121½, par. 270a(a) (now see 815 ILCS 505/10a(a) (West 2000)). Although the Act does not use the words "proximate cause," a tort concept, the language of section 10a(a) has been held to give rise to a requirement that plaintiff show that the consumer fraud proximately caused plaintiff's injury. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593 (1996).

## B. Privity

█ The circuit court construed the Act to require privity, some sort of direct contact between the plaintiffs and the representations made by Boise Cascade. The circuit court construed the Act too narrowly. The Act created a new cause of action that affords consumers broad protection by prohibiting any deception or false promise. *Miller v. William Chevrolet/Geo, Inc.*, 326 Ill. App. 3d 642, 654, 762 N.E.2d 1, 11 (2001). The Act eliminated many of the elements of common-law fraud in this new cause of action. *Miller*, 326 Ill. App. 3d at 654, 762 N.E.2d at 11. For example, the plaintiff's reliance on the defendant's deception is not an element of a consumer fraud claim. *Miller*, 326 Ill. App. 3d at 655, 762 N.E.2d at 12. Nor need the defendant have intended to deceive the plaintiff; innocent misrepresentations or material omissions intended to induce the plaintiff's reliance are actionable. *Miller*, 326 Ill. App. 3d at 655, 762 N.E.2d at 12. There is a two-step process under the Act. In the first step it is determined whether the conduct of the defendant is unlawful, without any consideration given to such matters as whether the plaintiff relied thereon, whether the plaintiff could have discovered the truth through reasonable inquiry, or whether the reliance was justified. In the second step it is determined whether plaintiff suffered actual damage as a result of a violation of the Act. The focus of the Act is upon the deceptive conduct of the defendant, not upon the conduct of the plaintiff. Ill. Rev. Stat. 1983, ch. 121½, par. 262 (now see 815 ILCS 505/2 (West 2000)) ("unlawful

whether any person has in fact been misled, deceived[,] or damaged thereby").

■ Even common-law fraud did not require privity between the plaintiff and defendant, only that the statement by the defendant be made with the intention that it reach the plaintiff and influence his action and that it does reach him and that he does rely upon it, to his damage. *St. Joseph Hospital v. Corbetta Construction Co.*, 21 Ill. App. 3d 925, 954, 316 N.E.2d 51, 72 (1974). Nor does the Act impose any privity requirement. Where a material fact is concealed, it is sufficient that there be an "intent that *others* rely upon the concealment." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 121½, par. 262 (now see 815 ILCS 505/2 (West 2000)). It is not required that any particular person rely, or be intended to rely, on the concealment. Some of the cases do list as an element "defendant's intent that *plaintiff* rely on the deception." (Emphasis added.) See, *e.g.*, *Connick*, 174 Ill. 2d at 501, 675 N.E.2d at 593. The cases which make that statement, however, all seem to be cases in which the deception was made directly to plaintiff. Certainly Boise Cascade did not need to know plaintiffs' identities when it made its deceptive statements. A more accurate statement of the element in the present case would appear to be: "defendant's intent that someone rely on the deception."

■ The circuit court entered summary judgment against plaintiffs Fischer and Torongo, who bought their homes new, concluding that they were not aware of any representations by Boise Cascade. The builder-seller of the homes was probably aware of the representations, but according to the circuit court that did not help plaintiffs because there was no evidence the builder-seller was an agent of Boise Cascade. That analysis is mistaken. Whether or not the builder-seller was Boise Cascade's agent, Boise Cascade's representations reached plaintiffs through the builder-seller, and plaintiffs Fischer and Torongo relied upon those representations, to their damage. In the *St. Joseph Hospital* case, General Electric made representations in a letter to the contractor that its Textolite plastic laminate wall paneling did not carry a flame spread rating of any kind. *St. Joseph Hospital*, 21 Ill. App. 3d at 951, 316 N.E.2d at 70. The paneling had been tested by Underwriters Laboratories, which determined that the rating would be 255 (applicable codes required a rating no higher than 15). Underwriters Laboratories refused to rate the paneling because it believed no product testing out over 200 should be given a rating. *St. Joseph Hospital*, 21 Ill. App. 3d at 949-51, 316 N.E.2d at 68-70. The court concluded that General Electric was guilty of fraud, and even though its representations were made to the contractor, and not directly to the hospital, the verdict in favor of the hospital was affirmed. *St. Joseph Hospital*, 21 Ill. App. 3d at 954-57, 316 N.E.2d at 72-74.

The circuit court's insistence on privity is apparent in its analysis of what constitutes a "material fact." The Act provides that the "concealment *** of any material fact, with intent that others rely upon the concealment," is unlawful. Ill. Rev. Stat. 1983, ch. 121½, par. 262 (now see 815 ILCS 505/2 (West 2000)). Not every concealment of a fact is unlawful. A manufacturer is generally under no obligation, for example, to disclose the day the product was made, the rate of pay of its workers, or what its product tastes like. The concealed fact must be "material." "A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." *Connick*, 174 Ill. 2d at 505, 675 N.E.2d at 595. The circuit court, however, did not focus on a hypothetical buyer in determining materiality. Rather, it focused on the plaintiffs in this case, six of whom were unaware the homes had Boise Cascade siding at the time they purchased them: "It follows logically that none of those six plaintiffs would have acted differently had they been aware of the alleged undesirable characteristics, false representations[,] and non[ ]disclosures." The circuit court's mistaken focus on the particular plaintiffs in this case misreads the Act. The Act and the cases refer to "a buyer," to "any buyer," and to "others." In determining whether a practice is unlawful there are no specific references to the person harmed.

## C. Proximate Cause

■ The circuit court determined that plaintiffs were relying on a marketing theory of proximate cause and that to prevail plaintiffs must establish that "without the allegedly deceptive advertising, the defendant would not have been in the siding business, because there would have been no market for its siding." *Cf. Munjal v. Baird & Warner, Inc.*, 138 Ill. App. 3d 172, 180-81, 485 N.E.2d 855, 863 (1985) (misrepresentation was an attempt to induce the purchaser to buy the house for a value that did not reflect the existence of the defect). The court concluded that plaintiffs could not prove such a case without plunging "the trier of fact into the murky depths of speculation." The court stated that while plaintiffs need not prove reliance to recover under the Act, "they must prove that someone saw the specific advertising in question with the result that the plaintiffs were directly impacted, *i.e.*, made a decision to their detriment." The court concluded that its observations concerning materiality were applicable on the issue of proximate cause, that most of the plaintiffs were unaware that Boise Cascade had manufactured the siding on their homes when they made their purchase:

"Thus, it seems that no representation or non[ ]disclosure concerning Boise Cascade siding could have affected their purchasing decision. The conclusion seems inescapable, therefore, that nothing the defendant said, wrote, advertised[,] or refrained from disclosing could proximately cause the damages six of the plaintiffs claim they have suffered."

The circuit court's conclusion as a matter of law that causation was too remote, that there was no proximate causation, is erroneous. Where reasonable minds could differ whether the defendant's conduct was a substantial factor in bringing about the injury, the matter is for the jury to decide. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455, 605 N.E.2d 493, 502-03 (1992). Proximate cause must be proved by a reasonable certainty, but that is true of every element found by a jury. If there is some evidence indicating proximate cause, the jury verdict cannot be overturned. See *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 405-06, 706 N.E.2d 441, 454-55 (1998) (reversing ruling there was no reasonably certain evidence to support future lost earnings instruction; some evidence all that is required); *McDonnell v. McPartlin*, 192 Ill. 2d 505, 516, 736 N.E.2d 1074, 1082 (2000) (some evidence of sole proximate cause sufficient to support instruction). The fact that Boise Cascade is separated from some plaintiffs by the builder-seller or by intervening purchasers does not necessarily destroy proximate cause. Proximate cause means any cause which, in natural or probable sequence, produced the injury complained of. It need not be " 'the only cause, nor the last or nearest cause.' " *Holton v. Memorial Hospital*, 176 Ill. 2d 95, 110-11, 679 N.E.2d 1202, 1209 (1997), quoting Illinois Pattern Jury Instructions, Civil, No. 15.01 (3d ed. 1995).

■ The term "proximate cause" describes two distinct requirements: cause in fact and legal cause. *Lee*, 152 Ill. 2d at 455, 605 N.E.2d at 502. Generally it is not enough to show cause in fact, or "but for" causation. A plaintiff may not recover against his mother, although but for his birth he would not have suffered all the problems he encountered in life. There must also be "legal cause," a policy decision that limits how far a defendant's legal responsibility can be extended for conduct that did, in fact, cause plaintiff's harm. *Lee*, 152 Ill. 2d at 455, 605 N.E.2d at 502 (question of duty also a policy decision). Legal cause is essentially a question of foreseeability; a defendant should not be found liable for a highly extraordinary result. *Lee*, 152 Ill. 2d at 456, 605 N.E.2d at 503. In cases arising under the Act, it appears that these policy decisions have been made by the Act, and damages are proximately caused if they are in fact caused by a method or practice which is unlawful under the Act, that is, if the damages would not have occurred but for the violation of the Act.

■ When a manufacturer is able to incorporate its defective product into a building by deception and the concealment of material facts, it is foreseeable that the purchaser or some subsequent purchaser will suffer damages when the defect is discovered. The proposition that use of defective materials, as a result of misrepresentation, will cause damages when the defects are discovered is not a highly extraordinary one. Using the circuit court's terms, was it possible or foreseeable that Boise Cascade's representations, of which plaintiffs were unaware, "could have affected their purchasing decision"? Deceptive advertising can affect a home buyer who is unaware of it, if it is relied upon by those with whom he deals, such as architects or builders. See *St. Joseph Hospital*, 21 Ill. App. 3d at 950-57, 316 N.E.2d at 69-74. If such a buyer has a cause of action when he discovers the misrepresentation, why should a subsequent buyer, who is the one to discover the misrepresentation, not have a cause of action?

Boise Cascade knew there would be subsequent buyers. Boise Cascade disseminated its allegedly deceptive advertising for the purpose that it would be relied upon. It makes no difference whether the deceptive advertising was read by architects, builders, or new home buyers, or whether they saw and liked homes built by others who had read the advertising. Proximate cause need not be the only cause, nor the last or nearest cause. The trial court's view of proximate cause is overly restrictive. See *Colonial Inn Motor Lodge, Inc. v. Gay*, 288 Ill. App. 3d 32, 44, 680 N.E.2d 407, 415 (1997) (possibility that colliding with a building will disrupt a gas line or create a fire hazard is not so inherently farfetched as to merit the label "freakish" or "fantastic").

## D. Other Arguments

■ The argument is made that plaintiffs' "marketing theory" would result in infinite liability for the manufacturer for any injury associated with the product. It is not correct that every purchaser of these homes from this time forward will have a cause of action against Boise Cascade. Only a purchaser who paid full price for the home, unaware of the defect, and then was unable to resell the home for its full price would have a cause of action. A purchaser who buys the home at a discount because of known problems with the siding has not been damaged.

In some marketing transaction cases, plaintiffs may be far removed from the deception or concealment. For example, in stock transactions, private representations may be made to only a few individuals, causing them to purchase the stock and driving up the price. Other individuals with no access to the representations may also purchase

the stock at the inflated price (not necessarily from the individuals to whom the representations were made) and attempt to recover for the representations. See *Oliveira v. Amoco Oil Co.*, 311 Ill. App. 3d 886, 893-94, 726 N.E.2d 51, 58 (2000), *rev'd*, 201 Ill. 2d 134, 776 N.E.2d 151 (2002). The present case involves a much tighter transaction: allegations of a physical defect in a product which has been transferred to plaintiffs. Even where privity of contract was required, privity was held to accompany a valid assignment of the contract. *Collins Co. v. Carboline Co.*, 125 Ill. 2d 498, 511, 532 N.E.2d 834, 839 (1988). Boise Cascade's representations apparently were widely distributed, and a jury could reasonably conclude that plaintiffs would not have suffered damages if the representations had not been made.

■ We further reject the circuit court's contention that plaintiff's cause of action is inconsistent with the Uniform Commercial Code (810 ILCS 5/2—316(2), (3) (West 2000)), which allows the disclaimer of an implied warranty of merchantability. There is nothing wrong with a manufacturer marketing Grade D siding. A problem only arises where the manufacturer markets that siding as Grade A siding. The existence of defects unaccompanied by misrepresentations does not amount to fraud. *Naiditch v. Shaf Home Builders, Inc.*, 160 Ill. App. 3d 245, 261, 512 N.E.2d 1027, 1036 (1987); *Heider v. Leewards Creative Crafts, Inc.*, 245 Ill. App. 3d 258, 270-71, 613 N.E.2d 805, 815 (1993) (misrepresentations lacking in *Naiditch*; evidence merely established house was defective).

## III. CONCLUSION

■ The focus of the Act is upon the conduct of the defendants, not upon the conduct of the plaintiffs. Whether defendants are guilty of unlawful practices under the Act must be determined without considering whether any person has in fact been misled, deceived, or damaged thereby. If defendants are guilty of unlawful practices, the question becomes whether plaintiffs have suffered actual damage as a result, normally a question for the jury. We cannot say that a reasonable jury could never conclude that plaintiffs sustained damages or that those damages were a natural and probable consequence of Boise Cascade's unlawful conduct.

We reverse the trial court's order entering summary judgment and remand for further proceedings.

Reversed and remanded.

KNECHT, J., concurs.

JUSTICE TURNER, dissenting:

I dissented in the majority opinion as modified upon denial of rehearing (*Shannon*, 328 Ill. App. 3d at 631-33, 766 N.E.2d at 1144-45 (Turner, J., dissenting)), and vacated by the Illinois Supreme Court with directions to reconsider (*Shannon*, 201 Ill. 2d 615 (2002)). Upon reconsideration, the majority reinstates its original decision. I again respectfully dissent.

I find the majority's insouciance to our supreme court's decision in *Oliveira* vexing. As the majority notes, in *Oliveira*, the supreme court stated explicitly that a plaintiff pleading a private cause of action under the Act must allege that he or she was deceived. 336 Ill. App. 3d at 537. Nevertheless, the majority continues to ignore, as it did in its original reversal, that plaintiffs here do *not* allege *they* were deceived. Plaintiffs instead rely on a "market theory" of causation, under which they assert defendant's deceptive advertising created a market for defendant's siding that would not have otherwise existed and thus resulted in defendant's siding being installed on plaintiffs' homes.

In *Oliveira*, 201 Ill. 2d at 155, 776 N.E.2d at 164, our supreme court noted two infirmities with the plaintiff's "market theory" that produced results at odds with the court's earlier decision in *Zekman*. The first one is pointed out by the majority, where it states "[u]nder the *Oliveira* plaintiff's ' "market theory" ' of causation, even purchasers of Amoco's gasoline who saw the ads but never believed them, *i.e.*, those who ' "knew the truth," ' would have valid claims under section 10a(a) of the [Act]." 336 Ill. App. 3d at 536, quoting *Oliveira*, 201 Ill. 2d at 155, 776 N.E.2d at 164. Here, we have the same infirmity because plaintiffs' "market theory" requires us to assume some unknown individuals at some time saw the ads. Accordingly, some of those unknown individuals may not have believed the ads but still purchased the siding anyway. The people whose homes the siding was installed upon would still have a valid claim under the Act under plaintiffs' theory.

Additionally, the majority believes this infirmity does not exist because "a purchaser who buys the home at a discount because of known problems with the siding has not been damaged and would have no claim." 336 Ill. App. 3d at 537. However, as noted in my previous dissent, several of the plaintiffs in this case knew they had damaged siding when they purchased their homes. *Shannon*, 328 Ill. App. 3d at 633, 766 N.E.2d at 1145 (Turner, J., dissenting). Moreover, the majority's analysis is irrelevant because plaintiffs do not assert that anyone, including defendant, made deceptive representations about their homes' siding to them before they purchased their homes.

The majority attempts to dismiss the second infirmity, that

"purchasers of defendant's premium gasolines who never saw the ads and, thus, were 'not deceived' also have valid claims." *Oliveira*, 201 Ill. 2d at 155, 776 N.E.2d at 164. The majority asserts *"Oliveira* does not lay down the inflexible rule that plaintiff must have read the ads." 336 Ill. App. 3d at 537. However, in *Zekman*, 182 Ill. 2d at 376, 695 N.E.2d at 862, the supreme court found the plaintiff had not demonstrated proximate cause because the plaintiff was not deceived where he had not read the deceptive material. As noted, the *Oliveira* court rejected the plaintiff's attempt to distinguish *Zekman* and again found a plaintiff who never saw the ads was not deceived. *Oliveira*, 201 Ill. 2d at 155, 776 N.E.2d at 164. Likewise, here, plaintiffs never saw defendant's siding ads and, thus, were not deceived.

Additionally, the majority asserts that "[p]urchasers of homes employ builders, architects, and engineers to examine the product literature for them; and it is a mistake to say that home purchasers do not rely on that product literature." 336 Ill. App. 3d at 537. However, none of the plaintiffs here employed builders, architects, or engineers. In fact, plaintiffs do not allege that anyone connected in some way to their homes saw defendant's ads. The majority appears to evade the actual facts of this case, as it does the actual pleadings.

The majority acknowledges that "[u]nder *Oliveira*, a plaintiff must allege *** 'that he was, *in some manner*, deceived' " and concludes "[p]laintiff does so here." 336 Ill. App. 3d at 537, quoting *Oliveira*, 201 Ill. 2d at 155, 776 N.E.2d at 164. Plaintiffs most assuredly do *not* do so here. Indeed, the very essence of plaintiffs' "market theory" is to allow liability to attach without demonstrating any deception to plaintiffs whatsoever. Therefore, I find the majority's opinion to be at odds with *Zekman* and *Oliveira* and would affirm the trial court's grant of summary judgment in defendant's favor. I also reinstate my original dissent. See *Shannon*, 328 Ill. App. 3d at 631-33, 766 N.E.2d at 1144-45 (Turner, J., dissenting).